[No. 11-39975-1.   Division One.   January 12, 1970.]
Panel 1

LINDA CASE et al., Respondents, v. DAVID H. OLWELL, as Administrator, Respondent, ROBIN KING et al., Appellants.

Kempton, Savage & Gossard and Anthony Savage, Jr., for appellants.

Rutherford, Kargianis & Austin and Samuel C. Rutherford, for respondents Case et al.

Frank J. Eberharter and Robert Ward Freedman, for respondent Olwell.

SWANSON, J.—The south end of Seattle's Aurora Bridge on a dark, rainy night in January, 1966, was the scene of a collision between a Volkswagen automobile driven by 16-

year-old Robin King, and Thomas Clark's following car. Plaintiffs, Linda Case[1] and Jeanette Wyatt,[2] were riding in the back seat of the Volkswagen. They claimed injuries from the accident and sued Clark,[3] alleging negligence. They later joined King,[4] hereinafter referred to as the sole appellant, alleging gross negligence. Clark denied liability and also sued King for damages to his vehicle.

The jury returned verdicts in favor of plaintiffs Case and Wyatt (passengers in the King vehicle) and Thomas Clark (driver of the following car), all against King. King appeals.

Appellant King first assigns error to the publication and reading of Clark's deposition. Clark's deposition was taken on July 13, 1966, prior to the time Robin King and her parents were brought in as additional party defendants. On the day set for trial, May 22, 1967, the parties learned that respondent Clark had committed suicide the previous evening. His deposition was read into evidence over the objection of appellant King. The court instructed the jury that the deposition was not to be considered against King, as she had not been a party when it was taken. Appellant King claims it was error to publish Clark's deposition. She contends that the precautionary instruction given by the court was insufficient to protect her rights and that the deposition should not have been read at all. Respondent Clark argues that CR 26 controls. The rule provides:

---

[1]Linda Case will be referred to as one of the plaintiffs, even though she was 16 years old at the time of the accident and brought suit by her guardian ad litem William A. Case, her father.

[2]Jeanette Wyatt will be referred to as one of the plaintiffs, even though she was 15 years old at the time of the accident and brought suit by her guardian ad litem Margot Wyatt, her mother.

[3]Thomas Lane Clark was deceased at the time of trial, and David H. Olwell, as special administrator for the estate of Thomas Lane Clark, was substituted for the defendant Clark.

[4]Robin King, a minor, was named as an additional party defendant with her stepfather and mother (the owner of the Volkswagen), Douglas McLean and Shirley McLean.

(d) Use of Depositions. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any one of the following provisions.

. . .

(3) *Unavailability of Witnesses*. The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

(A) that the witness is dead; . . .

■ The trial court correctly held that CR 26 prevented the use of the deposition against the appellant King, but that the deposition could be used by the plaintiffs and the respondent Clark. The trial court orally instructed the jury that they were not to consider Clark's deposition testimony as against the appellant. Although King claims that the judge's cautionary instruction was not sufficient, the presumption is that the jury followed the instruction which was repeated several times. *Myers v. Harter*, 76 Wn.2d 772, 459 P.2d 25 (1969).

■ It should be noted that appellant King had several other procedures open to her at trial, had she thought the cautionary instruction an insufficient safeguard of her interests. She could have submitted a written instruction to be read at the close of the case. This, she did not do. She could have moved for a separate trial under CR 42(b).[5] This, likewise, was not done. Having not sought these remedies, appellant will not now be heard to complain.

Appellant secondly assigns error to the court's instructions 14 and 15 which read as follows:

14. No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate

---

[5]"Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury."

signal to the driver of any vehicle immediately to the rear where there is an opportunity to do so.

15. Our laws further provide that no person shall turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.

A vehicle operator who intends to change lanes is required to clearly signal this intention to other traffic a reasonable distance prior to turning the vehicle.

It is King's position that there was no evidence introduced at the trial to justify giving these instructions. A somewhat detailed review of the evidence is therefore necessary.

Aurora Avenue in Seattle is a 2-way, divided, major arterial, multiple lane highway, with a posted speed limit of 40 miles per hour. It is intersected on the west side by Raye Street, adjacent to the Aurora Bridge. All lefthand turns from Raye Street into Aurora Avenue are prohibited. Halladay Street intersects Aurora Avenue on the east side, south of the bridge. Likewise, all left turns from Halladay Street into Aurora Avenue are prohibited. [See diagram.]

The fact of the accident is undisputed. The King vehicle was struck from the rear by an automobile driven by the respondent Thomas Clark. It was raining heavily, but the area was well lighted. There was no obstruction to a view of the scene of the accident from approximately one block beyond Halladay Street to the south. The facts leading up to the accident itself are in dispute and are the focal point of this appeal.

Evidence supporting one version of the accident was given to investigating police officers at the scene. Miss King told them she made a left turn from Raye Street onto Aurora Avenue. If this is true, she crossed the southbound traffic lanes on her way into the northbound lane adjacent to the center line. She proceeded only a short distance, northerly of the intersection of Raye Street and Aurora Avenue, onto the bridge, when Clark's vehicle struck the rear of the Volkswagen. Respondent Clark, in the presence of Miss King, told the police that he was driving north on Aurora and was unable to stop in time after first seeing the

rear lights of King's Volkswagen. Both plaintiffs Wyatt and Case said Miss King made a left turn from Queen Anne Hill onto Aurora Avenue, northbound. This version is consistent with Clark's deposition testimony in which he stated the Volkswagen made a left turn in front of him into the northbound lane of travel on Aurora Avenue.

The second version of the accident was given at the trial. Miss King and the passengers in her vehicle testified that they drove west on Halladay Street, stopped at the stop sign, and made a right turn into a northbound lane on Aurora Avenue. In relating this version, Miss King stated on direct examination that she entered Aurora Avenue from Halladay Street, crossed multiple lanes of traffic into the center lane and intended to make a left turn until she got onto the bridge, at which time she decided to go north. Plaintiff Wyatt testified that the Volkswagen moved quite slowly near Raye Street where they wanted to turn left, and then speeded up just prior to the collision. Her testimony was as follows:

A. She proceeded into the center lane, and very slowly, and was even slower as we were looking up Raye Street to see if this was a left turn area, if we could turn left here. Well, we saw we couldn't because there were buttons there on the road and the divider. And so we were hit just as we were speeding up, realized we could not turn then. Q. How slowly did she proceed? A. Five to ten miles an hour.

Plaintiff Wyatt further testified that appellant King did not signal prior to the accident. Plaintiff Case, also a passenger, stated they were going 15 miles per hour just prior to the collision, but admitted that the car could have been stopped before the accident. Passenger Hull stated that she saw headlights of a car about one block away in the center lane of Aurora Avenue as they entered Aurora, although she testified that appellant King was proceeding about 25 miles an hour on Aurora. A prior statement of Miss Hull admitted into evidence said in part:

A. . . . We wanted to go south, and Robin saw the buttons to the center lane. I pointed them out. We

thought it was a left turn lane. Robin was either at a complete stop or just moving a little bit when we were struck in the rear. I did notice the headlights were on, but I don't know if Robin had the blinkers on when we were hit.

Respondent Clark told the officers at the scene that he did not see the lights on the Volkswagen and was unable to stop in time. This evidence would entitle the trier of fact to believe that the King vehicle turned slowly onto Aurora Avenue, crossed multiple lanes without signaling while the headlights of an approaching car shone about a block away, and then, intending to turn left, decreased its speed to a virtual stop, *i.e.*, approximately 5 to 10 miles per hour, at which time the collision occurred.

Despite this evidence, appellant King contends that if Clark was exceeding the speed limit or failed to see the King vehicle at all, the absence of a slowing, stopping, or turning signal would have contributed nothing to the collision. Appellant relies on *Ward v. Zeugner,* 64 Wn.2d 570, 575, 392 P.2d 811 (1964), to support her position. In *Ward* the plaintiff challenged an instruction which in effect told the jury he could be found contributorially negligent for not signaling his departure from a curb:

> [I]t is wholly conjectural that either the driver or passenger would have observed any signal. Absent such observation, or a reasonable evidentiary hypothesis upon which to predicate a likelihood of observation, causal relationship between plaintiff's failure to signal and the collision is absent. The deficiency cannot be evidentially supplied by simply adding together the fact of plaintiff's failure to signal and the fact of defendant driver's inattentiveness.

In the case at bar, there is no evidence that Clark did not see the King vehicle until the moment before collision. He only stated that he did not see the lights of the Volkswagen in time to avoid the collision. This causes us to conclude that there was "a reasonable evidentiary hypothesis upon which to predicate a likelihood of observation." There being evidence on which the jury could find no signal was given and that Clark could have seen a signal had one been

given, it is for the jury to decide whether the failure to give a signal was a proximate cause of the accident.

There was substantial evidence which justified submitting these instructions to the jury.

Judgment affirmed.

JAMES, C. J., and FARRIS, J., concur.