114 P.3d 1182 (2005)
154 Wash.2d 530
Jennifer RUFER and David Rufer, individually, and as husband and wife, Petitioners,
v.
ABBOTT LABORATORIES, University of Washington Medical Center, and Hisham Tamimi, M.D., Respondents.
No. 75116-1.
Supreme Court of Washington, En Banc.
Argued February 8, 2005.
Decided June 30, 2005.
*1184 Paul Nicholas Luvera, Joel Dean Cunningham, J. Andrew Hoyal, David Merritt Beninger, Luvera Barnett Brindley Beninger, et al., Evy F. McElmeel, Howard Mark Goodfriend, Catherine Wright Smith, Edwards Sieh Smith & Goodfriend PS, Seattle, for Petitioners.
Bradley S. Keller, Kimberly Ann Boyce, Michael Barr King, Lane Powell Spears Lubersky LLP, Seattle, Lara Levitan, Abbott Laboraties, Abbott Park, IL, William James Leedom, Bennett Bigelow Leedom PS, Seattle, Thomas Durkin, Sheila Finnegan, Javier Rubinstein, Mayer Brown Rowe & Maw, Chicago, IL, for Respondents.
Gregory Mann Miller, Seattle, James C. Martin, Paul D. Fogel, Raymond Cardozo, Reed, Smith, Corsby, Heafey, San Francisco, CA, for Amicus Curiae Advanced Medical Technology Ass'n.
Christopher W. Tompkins, Betts Patterson & Mines PS, Seattle, Robert N. Weiner, Arnold & Porter, Washington, DC, Hugh F. Young, Product Liability Advisory Council, Inc., Reston, VA, for Amicus Curiae Product Liability Advisory Council, Inc.
Stewart Andrew Estes, Keating Bucklin & McCormack, Shilpa Bhatia, Wilson Smith Cochran Dickerson, Stephen H. Goodman, Graham & Dunn PC, Seattle, for Amicus Curiae Washington Defense Trail Lawyers.
Bryan Patrick Harnetiaux, Debra Leigh Williams Stephens, Spokane, for Amicus Curiae Washington State Trial Lawyers Ass'n.
FAIRHURST, J.
¶ 1 Jennifer and David Rufer sued the University of Washington Medical Center (UWMC) and Abbott Laboratories for medical malpractice and product liability, respectively, after Jennifer underwent lung surgery, a hysterectomy, and chemotherapy  none of which turned out to be medically warranted. The Rufers were ultimately successful in their lawsuit but now ask this court to review the Court of Appeals decision on two discrete issues. First, the Rufers dispute the Court of Appeals decision regarding the proper standard for sealing records in a civil case. Second, the Rufers and UWMC[1] ask this court to find that the Court of Appeals improperly relieved Abbott of its postjudgment interest obligation for the time period that a motion to supplement the record was being pursued by UWMC and the Rufers.
¶ 2 We hold that documents filed with the court will presumptively be open to the public unless compelling reasons for closure exist consistent with the Seattle Times Co. v. Ishikawa, 97 Wash.2d 30, 640 P.2d 716 (1982), standards. We also hold that the Court of Appeals did not have authority to toll the accrual of Abbott's postjudgment interest obligation during consideration of the motion to supplement.

I. FACTUAL AND PROCEDURAL HISTORY
¶ 3 The facts underlying the merits of the Rufers' lawsuit are not relevant to the present issues, but we briefly summarize them for context. After complaining of abdominal pain and vaginal bleeding, Jennifer's medical providers tested her blood to confirm a probable diagnosis of an ectopic pregnancy. The continued indication of a presence of abnormal levels of human chroionic gonadotropin (hCG) in Jennifer's blood led to the eventual diagnosis of a deadly cancer known as gestational trophoblastic disease (GTD). In an effort to combat this diagnosis, Jennifer underwent increased courses of chemotherapy, a hysterectomy, and had part of her lung removed. Jennifer's GTD diagnosis was solely based on the hCG levels detected through a test manufactured by Abbott. Some time later, UWMC determined that Jennifer did not have  nor did she ever have  GTD. The tests were yielding false positives.
¶ 4 The Rufers sued UWMC for malpractice and Abbott for product liability, alleging *1185 in part that Abbott failed to warn physicians of the known history of false positives resulting in unnecessary treatment for misdiagnosed GTD.
¶ 5 Before trial commenced, Abbott moved for an order protecting confidential proprietary information produced during discovery. The motion was granted pursuant to CR 26(c). After summary judgment motions were filed, the Rufers asked the court to make public all pleadings filed in connection with the pending summary judgment motions. Judge William L. Downing denied the motion, but stated:
Documents containing information designated as "confidential" in accordance with the provisions of the prior Order may continue to be filed under seal per the authority of that Order until such time as a jury is sworn to try this cause. Thereafter, all documents filed and exhibits utilized in these proceedings will be accorded the usual presumption of openness. A heavy burden will be placed on any party seeking to deny public access to the facts and allegations upon which this case is being adjudicated.
Clerk's Papers (CP) at 2539-40. Following an extensive trial, the jury rendered a verdict awarding $16 million to the Rufers and allocating 50 percent fault each to UWMC and Abbott.
¶ 6 At the close of trial, Abbott moved the court to seal one trial exhibit (Exhibit 168), several pretrial and deposition exhibits, and selected portions of deposition testimony. Abbott relied heavily on the affidavit of Dr. Beth Schodin (an Abbott employee) in its motion to seal which identified portions of depositions published at trial, deposition exhibits, and a trial exhibit as containing "highly sensitive, trade secret and proprietary information." CP at 2506.
¶ 7 The Rufers and UWMC opposed the motion and additionally requested that the pretrial confidentiality order be dissolved. With respect to the trial exhibit at issue (Exhibit 168), the Rufers argued that the document "was the subject of extensive trial testimony by Abbott's witnesses." CP at 2617. With respect to depositions, initially the Rufers opposed the motion to seal any depositions of witnesses who testified at trial. However, they have since conceded in their briefing and oral argument before this court that depositions which were never used at trial (for impeachment or as substantive evidence) may properly remain sealed for good cause shown. They stress, however, that any depositions or deposition excerpts "which were submitted in support of or in opposition to summary judgment motions, or motions in limine which were considered by the trial court, or depositions or deposition excerpts used at trial in any way" should be subject to the compelling interest standard. Pet'r's Suppl. Br. at 18, n.13.
¶ 8 In reviewing these motions, Judge Downing recognized three categories of records the parties were asking the court to seal or open:
In the involved law offices, judicial chambers and clerk's storage areas, there now exists a great deal of information contained in a staggering volume of documents.... Each of these documents, access to which is now the issue before the Court, fits into one or more of three sets.
[1] An uncommonly large set of evidence was put before the jury during the testimony of the 51 witnesses with the accompanying presentation of hundreds of trial exhibits. [2] An additional body of evidence, some appearing in the trial record and some not, was contained in the similarly large set of documents put before the Court in connection with the various trial and pretrial motions. [3] Finally, the largest set of all would presumably be that constituting the discovery materials that were exchanged in counsel's preparation of the case for trial.
CP at 2848. The court took the liberty of reformulating the issues the parties presented in their respective motions as the following:
1. Should certain documents considered by the Court and discussed openly during these proceedings (both trial and pretrial) be permitted to be filed under seal?
2. Should the depositions, limited portions of which were utilized at trial, and which were technically "published" at that time, be permitted to be filed partially under seal?
3. Should the Court now dissolve the Protective Order that governed the parties' *1186 exchange of documents and information during the discovery phase of these proceedings?
CP at 2848-49. Judge Downing answered the first two questions by ordering that all exhibits, briefs, and memoranda filed with the court be made open and available for public inspection because the "sealing of court records can only be done under compelling circumstances where justice so requires." CP at 2849 (internal quotation omitted).[2] Judge Downing could not "find there to be a sufficient demonstration of circumstances that would override the public interest and compel denial of access," noting
There is nothing before the Court to support any reasonable conclusion that an Abbott competitor stands poised to gain unfair economic advantage through such access. Nor is there any showing of foreseeable misuse of the documents compelling the Court to such denial. The fact that a party might consider information as "confidential" or even "proprietary" and prefer that documents not become public is too obviously insufficient to merit discussion.
CP at 2850.
¶ 9 All of the parties appealed. While the appeal was pending, Abbott notified the other parties and the court that it had discovered documents not previously produced that would have been responsive to prior discovery requests. UWMC and the Rufers moved to supplement the appellate record with the newly discovered documents pursuant to RAP 9.11 and to delay briefing pending further discovery. The appeal was delayed for about nine months during the consideration of this motion. The motion was ultimately denied, although the Court of Appeals commissioner did find that there was a "potential inequity in completely ignoring the new information. But for Abbott's oversight in pre-trial discovery, the jury might have been presented a more accurate background regarding the history of false positives and interaction between the FDA and Abbott." Pet. for Review, App. J at 6. Pursuant to its broad authority granted by RAP 8.3 to issue orders "to insure effective and equitable review," the commissioner then allowed the parties to include "a short summary of the new information and its significance" in their briefing before the Court of Appeals in order to give the panel of judges "a more accurate background regarding this case." Id.
¶ 10 The Court of Appeals affirmed the trial court in many respects but reversed and remanded on two separate issues. First, it vacated the trial court's order issued at the close of trial which unsealed all court records and held the trial court used the improper standard in determining which records should be sealed. Rufer v. Abbott Labs., noted at 118 Wash.App. 1080, 2003 WL 22430193, at *14-*15. Second, the Court of Appeals determined that Abbott is not responsible for postjudgment interest that accrued during the pendency of the "unsuccessful" RAP 9.11 motion made by UWMC and the Rufers. Id. at *10.
¶ 11 The Rufers petitioned this court for discretionary review of the Court of Appeals decision regarding the sealing of trial records and reduction of Abbott's postjudgment interest obligation. UWMC joined the Rufers on the postjudgment interest issue only.

II. QUESTIONS PRESENTED
A. Did the trial court use the proper standard in determining which records should be sealed and which should be unsealed?
B. May a court excuse a defendant against whom a money judgment has been awarded from the portion of postjudgment interest that accrued during a delay in the appeal?

III. ANALYSIS
A. Standard to be used in determining which records should be sealed and which should be unsealed
¶ 12 The legal standard for sealing or unsealing court records is a question of *1187 law which we review de novo. Dreiling v. Jain, 151 Wash.2d 900, 908, 93 P.3d 861 (2004). We review a trial court's decision to seal or unseal records for abuse of discretion, but if that decision is based on an improper legal rule, we remand to the trial court to apply the correct rule. Id. at 907, 93 P.3d 861.
¶ 13 In determining whether court records may be sealed from public disclosure, we start with the presumption of openness. Id. Our state constitution mandates that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." CONST. art. I, § 10. But while we presume court records will be made open and available for public inspection, court records may be sealed "to protect other significant and fundamental rights." Dreiling, 151 Wash.2d at 909, 93 P.3d 861. The party wishing to keep a record sealed usually has the burden of demonstrating the need to do so. Id.
¶ 14 In prior decisions, we have outlined the standards applicable to the sealing of records in three roughly distinct areas: the raw fruits of discovery, trial proceedings, and dispositive motions and records attached to those motions. We have not, until this case, had occasion to discuss the standard applicable to non-dispositive motions and discovery that is published[3] (and thus technically filed) but not used at trial.
¶ 15 Courts are empowered to limit the scope of discovery and the use of its fruits "[u]pon motion" and "for good cause shown." CR 26(c).[4] In Dreiling, we noted that article I, section 10 "does not speak" to the disclosure of information surfacing during pretrial discovery that does not otherwise come before the court because it "does not become part of the court's decision-making process." 151 Wash.2d at 909-10, 93 P.3d 861. Thus, because there is not yet a public right of access with respect to these materials, "[m]ere discovery may be sealed `for good cause shown.'"[5]Id. at 909, 93 P.3d 861 (quoting CR 26(c)).
¶ 16 Trial proceedings and records attached to dispositive motions, on the other hand, are presumptively open absent an "`overriding interest.'" Dreiling, 151 Wash.2d at 910, 93 P.3d 861 (quoting Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 252 (4th Cir.1988)); Cohen v. Everett City Council, 85 Wash.2d 385, 388-89, 535 P.2d 801 (1975) (holding that "our constitution mandates an open public trial in a civil case, absent any of the statutory exceptions or compelling reasons calling for exercise of the court's inherent power to control its *1188 proceedings"). The open administration of justice is more than just assuring that a court achieved the "right" result in any given case:
We adhere to the constitutional principle that it is the right of the people to access open courts where they may freely observe the administration of civil and criminal justice. Openness of courts is essential to the courts' ability to maintain public confidence in the fairness and honesty of the judicial branch of government as being the ultimate protector of liberty, property, and constitutional integrity.
Allied Daily Newspapers of Wash. v. Eikenberry, 121 Wash.2d 205, 211, 848 P.2d 1258 (1993).[6] As Judge Downing declared, "[w]hether the Court fairly and appropriately dealt with the parties and the issues that came before it are the matters of public interest that dictate the openness of judicial proceedings. Everything that passes before this Court, whether or not ultimately held to be admissible at trial or supportive of a viable claim, has relevance to that inquiry." CP at 2851.
¶ 17 Recently, we have confirmed that the heightened presumption of openness applicable to trials (including records disclosed during trial) applies equally to dispositive motions filed in civil cases. Dreiling, 151 Wash.2d at 910, 93 P.3d 861. Although discovery may be sealed for good cause shown, "when previously sealed discovery documents are attached in support of a summary judgment [or other dispositive] motion, they lose their character as the raw fruits of discovery. Such documents may not be kept from public view `without some overriding interest' requiring secrecy." Id. (quoting Rushford, 846 F.2d at 252). We clarified in Dreiling that the guidelines fleshed out in Ishikawa,[7] which were applied specifically to *1189 the question of whether a criminal motion to dismiss hearing could be closed to the public, are equally applicable to "documents filed in support of dispositive motions" in civil cases. Dreiling, 151 Wash.2d at 915, 93 P.3d 861. To balance the constitutional requirement of the open administration of justice against potentially conflicting rights, we directed courts to apply the five Ishikawa factors in determining which documents may continue to be sealed. Id. at 908, 913, 93 P.3d 861.[8] Neither the trial court nor the Court of Appeals had the benefit of our decision in Dreiling when issuing its respective opinion on the present matter.
¶ 18 The trial court determined that no compelling interest justified the continued sealing of any court record in the present matter and, thus, ordered all records filed with the court to be made open and available for public inspection.
¶ 19 The Court of Appeals reversed, holding that the trial court used the improper standard in unsealing records. Disregarding the Rufers' argument that courts must apply the "Ishikawa factors" in deciding which records may continue to be sealed, the Court of Appeals adopted and applied the Ninth Circuit Court of Appeals decision in Foltz v. State Farm Mutual Automobile Insurance Co., 331 F.3d 1122 (9th Cir.2003). Rufer, 118 Wash.App. 1080, 2003 WL 22430193, at *14-*15. According to the Court of Appeals' interpretation of Foltz, the compelling interest standard applies only to documents attached to dispositive motions. That is, "[o]nce sealed discovery documents are attached to a dispositive motion, they are no longer protected from public access, absent compelling reasons." Id. at *14. "On the other hand, sealed discovery documents attached to nondispositive motions require only good cause to maintain their confidentiality." Id.
¶ 20 The Court of Appeals found that there was not enough information in the appellate record to accurately apply Foltz to the Rufers' request to unseal all court records, and remanded to the trial court to make such a determination in light of Foltz. It also found that Abbott's motion to seal "confidential deposition testimony that was `published' to the court but not used or introduced at trial" and "a trial exhibit containing confidential information and trade secrets" should be granted on remand because Abbott had already shown good cause to seal the records and it was improper for the court to require a greater showing.[9]Id. at *15.
¶ 21 In Dreiling, this court noted with approval the Ninth Circuit's opinion in Foltz. Dreiling, 151 Wash.2d at 916, 93 P.3d 861. But this approval was limited to the context of "the appropriate mechanics and procedures to be followed when a trial court is confronted with a motion to place documents under seal." Id.[10] Thus, we found "instructive" *1190 principles the Foltz court articulated such as the following: "courts should generally not approve blanket protective orders," parties requesting closure bear the respective burden for each document they seek to protect, "[u]nsubstantiated allegations will not satisfy the rule," "[e]ntire documents should not be protected where mere redaction of sensitive items will satisfy the need for secrecy," and "[r]eliance on the confidentiality provisions of the original protective order does not foreclose independent discovery by intervenors, as it is not reasonable to expect the court to hold records under seal forever." Id. at 916-17. We did not have occasion in Dreiling to comment on the Ninth Circuit's distinction in Foltz between dispositive and nondispositive motions.

1. Beyond Dreiling: Additional standards for the sealing and unsealing of court records
¶ 22 In light of the particular facts presented in this case, the parties and amici ask this court to establish several new standards for the sealing and unsealing of court records. We discuss each below.

a. Whether separate standards apply depending on whose documents are being attached to a motion or pleading
¶ 23 Although in Dreiling we clearly held that the compelling interest standard applies when parties attempt to seal (or keep sealed) documents filed in conjunction with dispositive motions, Abbott and Amicus Product Liability Advisory Council, Inc. (PLAC) ask this court to limit that holding to instances where parties attach their own documents to dispositive motions. They argue that we should apply a "good cause" standard when one party attaches to any motion or pleading documents produced during discovery by another party which were subject to a protective order unless and until the moving party can demonstrate the relevancy of the attachments to the substance of their motion. But we have already explicitly held in Dreiling that a compelling interest (or "overriding interest") standard controls when parties attempt to seal any portion of a dispositive motion.[11] 151 Wash.2d at 910, 93 P.3d 861.
¶ 24 The request to limit the standard articulated in Dreiling to instances where parties file motions supported with their own documents (rather than those produced by other parties) appears to stem from a concern that the judicial process may be abused. That is, parties may use the motions and pleadings process to embarrass or harass other parties by attaching confidential documents produced by other parties which may not be relevant to the underlying motion. PLAC argues it is unfair that those documents would be entitled to a strong presumption of openness by virtue of their attachment to a dispositive motion.
¶ 25 The disposition of this issue depends on whether we will presume that attorneys act in good faith or in bad faith. While we *1191 do not deny the possibility, it is overly cynical to presume that parties will act vindictively and abusively by attaching documents wholly irrelevant to their motions for the sole purpose of embarrassing or harming opposing parties. CR 26(h) requires a party filing discovery materials for use in a proceeding to "file only those portions upon which the party relies." When parties do act in bad faith by abusing the discovery or pleading processes, there are specific sanctions that courts should impose. See CR 11, 26(g). We need not devise an entirely different standard to address the concerns raised with respect to this issue.
¶ 26 Additionally, the potential for abuse is also addressed through the application of the Ishikawa factors to a motion to seal. If a party attaches to a motion something that is both irrelevant to the motion and confidential to another party, the court should seal it. When there is indeed little or no relevant relationship between the document and the motion, the court, in balancing the competing interests of the parties and the public pursuant to the fourth Ishikawa factor, would find that there are little or no valid interests of the party attaching the document to its motion or of the public with respect to disclosure of the document. This is because the interest of the public that we are concerned with in making these determinations is the public's right to the open administration of justice. We have already held that article I, section 10 is not relevant to documents that do not become part of the court's decision making process. Dreiling, 151 Wash.2d at 909-10, 93 P.3d 861. Thus, if a record is truly irrelevant to the merits of the case and the motion before the court, the court would not consider the document in evaluating the motion before it, and in applying Ishikawa it would likely find that sealing is warranted. As long as the opposing party has a valid interest in keeping the information confidential, there is very little, if any, interest of the public or the moving party to balance against that asserted interest.

b. Nondispositive motions and other documents filed with the court
¶ 27 The Rufers and Amicus Washington State Trial Lawyers Association Foundation ask this court to extend Dreiling and its predecessors to require an overriding interest before a court will seal any records once they have been filed with the court  including those filed in furtherance of nondispositive motions, such as motions in limine.
¶ 28 Abbott and amici PLAC and Washington Defense Trial Lawyers, on the other hand, urge us to apply the Ninth Circuit's language in Foltz that documents filed in furtherance of nondispositive motions may be sealed merely upon a showing of good cause. See Foltz, 331 F.3d at 1135. They ask us to limit Dreiling to only those records which the court relied upon in making dispositive decisions. Thus, any records not considered by the court in making a dispositive decision would continue to be sealed for good cause.
¶ 29 The basis for this disagreement, and how we must resolve it, depends upon the extent of the public's right to the open administration of justice. If we define this right narrowly to consist only of the observation of events leading directly up to the court's final decision, then arguably any documents put before the court that were not a part of that final decision would be outside of the scope of article I, section 10. Put another way, if the jury does not see it, the public does not see it. But our prior case law does not so limit the public's right to the open administration of justice. As previously noted, the right is not concerned with merely whether our courts are generating legally-sound results. Rather, we have interpreted this constitutional mandate as a means by which the public's trust and confidence in our entire judicial system may be strengthened and maintained. Allied Daily Newspapers, 121 Wash.2d at 211, 848 P.2d 1258. To accomplish such an ideal, the public must  absent any overriding interest  be afforded the ability to witness the complete judicial proceeding, including all records the court has considered in making any ruling, whether "dispositive" or not. There is good reason to diverge from federal open courts jurisprudence where appropriate. While our state constitution has an explicit open courts provision, there is no such counterpart in the federal constitution, and much of the federal *1192 right is grounded in federal common law. See Foltz, 331 F.3d at 1134.
¶ 30 We hold that any records that were filed with the court in anticipation of a court decision (dispositive or not) should be sealed or continue to be sealed only when the court determines  pursuant to Ishikawa  that there is a compelling interest which overrides the public's right to the open administration of justice. We are merely articulating the standard a trial court should use when confronted with a motion to seal records. It is within the trial court's discretion to apply that standard and determine if the interests asserted by the party wishing to seal records are compelling enough to override the presumption of openness. We can posit several interests that may override the presumption of openness, but we hesitate to list them here because they are not found in the facts before us and this analysis must be done on a case-by-case basis.
¶ 31 As we hold in this case that all documents filed with the trial court are open absent compelling interests to the contrary, future litigants might take that to mean that they no longer need to file their pleadings and motions under seal when attaching documents that were previously subject to a pretrial confidentiality order. We stress that this is not the case. In this particular case, parties who filed motions with attachments that were subject to the pretrial confidentiality order filed the motions under seal and then later requested them to be opened. This procedure should continue to be used even after this decision. Parties should continue to comply with pretrial confidentiality orders by filing any documents falling within the pretrial confidentiality order's scope under seal. Upon the filing of records under seal, the parties will now know that the court, upon motion, will open such records unless the party wishing to keep them sealed demonstrates an overriding interest. Thus, filing merely triggers the analysis of whether records should be opened; it does not automatically open previously sealed records. Parties opposing the potential opening would then be required to make the requisite showing of a compelling or overriding interest for closure.

2. Application of established rules to the present case
¶ 32 It appears that the trial court used the proper standard for most of the records it unsealed (the compelling interest test for all records filed with the court). The one exception would be any deposition transcripts published but not used in trial or as an attachment to any motion. Both parties concede that these documents should remain sealed for good cause. Where the trial court used the proper standard, its order would be subject to review only for an abuse of discretion. Here, although Dreiling was not yet decided (and thus courts were not yet explicitly directed to apply Ishikawa to civil proceedings), the trial court properly applied the compelling interest test to most of the records at issue and provided a sufficient rationale for its decision. The court noted Abbott's arguments that Abbott's proprietary information was at risk for misuse or unfair economic advantage of its competitors, but essentially it found that Abbott failed to actually support its claims. Thus, although the trial court did not specifically apply the Ishikawa analysis in this case, it effectively did so by allowing all parties to assert their respective interests, weighing those interests, and applying the compelling interest standard in making its determination. It appears from the record that both parties were given ample opportunity to assert their positions to the trial court regarding whether or not records should be sealed following trial.
¶ 33 Because the trial court properly applied the compelling interest standard to all records filed with the court, we reverse the Court of Appeals on this issue and affirm only with respect to published, unused discovery. We thereby mostly affirm the trial court and remand only to reseal any depositions that were not used in trial or used as support for any motion.

B. Authority to excuse a defendant against whom a money judgment has been awarded from the portion of postjudgment interest that accrued during a delay in the appeal
¶ 34 Whether a court has the legal or equitable authority to relieve a party of all *1193 or a portion of its postjudgment interest obligation is a question of law that is reviewed de novo. See Dreiling, 151 Wash.2d at 908, 93 P.3d 861. If a court does have the equitable authority to relieve a party of an otherwise legally required obligation, we will intrude upon its decision only if there was an abuse of discretion. SAC Downtown Ltd. P'ship v. Kahn, 123 Wash.2d 197, 204, 867 P.2d 605 (1994).
¶ 35 The Court of Appeals' entire discussion of this issue is contained in one single paragraph:
Abbott contends it is not responsible for post judgment interest accrued during the Rufers' and the UWMC's RAP 9.11 motion. Because this appeal was delayed for almost a year because of the Rufers' and the UWMC's unsuccessful motion, we agree that Abbott is not responsible for that portion of the interest. But for the RAP 9.11 motion, the period of post judgment interest would have been shorter. On remand, the trial court should determine the correct time period and amount of post judgment interest.
Rufer, 118 Wash.App. 1080, 2003 WL 22430193, at *10. The Court of Appeals provided no authoritative basis for its decision, and its abbreviated discussion does not appear to be entirely relevant or accurate.[12]
¶ 36 RCW 4.56.110(3) provides:
Judgments founded on the tortious conduct of individuals or other entities ... shall bear interest from the date of entry.... [I]n any case where a judgment entered on a verdict is wholly or partly affirmed on review, interest on the judgment or on that portion of the judgment affirmed shall date back to and shall accrue from the date the verdict was rendered.
¶ 37 The purpose of requiring a defendant to pay interest on a judgment is to compensate the plaintiff for the lost value of money when it was properly attributable to the plaintiff, but in the defendant's possession. Interest is not imposed as a punishment. See Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 835-36, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) ("`[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant.'" (quoting Poleto v. Consol. Rail Corp., 826 F.2d 1270, 1280 (3d Cir.1987))).
¶ 38 The Rufers and UWMC argue that the Court of Appeals had no authority for its decision to alter Abbott's statutory postjudgment interest obligation. Abbott responds that the Court of Appeals had the equitable authority to do so and acted within that authority in remanding to the trial court.
¶ 39 The postjudgment interest statute, RCW 4.56.110(3), is clear. It mandates that interest accrue from the date of entry of the judgment. It provides no exception for delays, unreasonable or otherwise. Abbott could have paid its financial obligation and still appealed the judgment. It chose not to and, consequently, should be responsible for interest accruing on its portion of the judgment until it was paid. The Court of Appeals did not find that the delay due to the RAP 9.11 motion was unreasonable or abusive. Had it made such a finding, it could have imposed sanctions under RAP 18.9. It did not do so.
*1194 ¶ 40 We reverse the Court of Appeals decision to relieve Abbott of its postjudgment interest obligation because it had no authority to do so.

IV. CONCLUSION
¶ 41 We reverse the Court of Appeals on both issues, with the limited exception of depositions that were technically published but never used in court. We therefore affirm the trial court's ruling with the noted exception.
WE CONCUR: ALEXANDER, C.J., C. JOHNSTON, SANDERS, CHAMBERS, OWENS, and J.M. JOHNSON, JJ.
MADSEN, J. (concurring in part, dissenting in part).
¶ 42 I agree with the majority's holding that the compelling interest standard applies to certain records filed with the court in this case and that the Court of Appeals had no authority for its decision to alter Abbott's statutory postjudgement interest obligation, imposed under RCW 4.56.110(3). However, I disagree with the extent to which the majority has broadened the compelling interest standard in its first holding.
¶ 43 The majority holds that "any records that were filed with the court in anticipation of a court decision (dispositive or not) should be sealed or continue to be sealed only when the court determines  pursuant to Ishikawa  that there is a compelling interest which overrides the public's right to the open administration of justice." Majority at 1192 (citing Seattle Times Co. v. Ishikawa, 97 Wash.2d 30, 640 P.2d 716 (1982)). While I believe the majority correctly determined that the compelling interest standard should be broadened, the majority chooses the ax over the scapel. In my view the compelling interest standard should not be extended so greatly as to include records filed with pretrial discovery-related motions or to attachments that have no relevance to the matter.
¶ 44 The Third Circuit has thoughtfully dealt with the issue of sealing records in pretrial discovery motions and correctly concluded that "there is a presumptive right to public access to all material filed in connection with nondiscovery pretrial motions, whether these motions are case dispositive or not, but no such right as to discovery motions and their supporting documents." Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 165 (3d Cir.1993). Accord, Anderson v. Cryovac, Inc., 805 F.2d 1 (1st Cir.1986) (holding that there is no right of public access to documents considered in civil discovery motions); Hammock ex rel. Hammock v. Hoffman-LaRoche, Inc., 142 N.J. 356, 662 A.2d 546 (1995) (holding in part that the presumption of public access attaches to pretrial-nondiscovery motions, whether preliminary or dispositive, and the materials, briefs and documents filed with the court in support of, or in opposition to, such motions but not to pretrial discovery motions). See also, U.S. v. Amodeo, 44 F.3d 141, 145 (2d Cir.1995) (a document filed with the court "must be relevant to the performance of the judicial function and useful in the judicial process" in order for the document to be "designated a judicial document" and thus subject to the right of public access).
¶ 45 In Leucadia, a leading producer of plastic net products sued its competitor, Applied Extrusion Technologies, Inc., (AET), alleging misappropriation of trade secrets relating to AET's production of nets. 998 F.2d at 158. The "gravamen" of Leucadia's complaint for injunctive relief focused on AET's hiring of several former Leucadia employees who had access to confidential technical information and customer lists. Id. at 158. The parties obtained a protective order covering documents and materials produced during pretrial discovery. Id. After the entry of the protective order, the parties commenced pretrial discovery. The parties filed numerous pretrial motions, many of which had documents attached that were obtained in discovery, subject to the protective order, and were filed with the trial court under seal. Id. Most of the parties' pretrial motions were denied by the trial court.[1] Before trial (and *1195 before the trial court ruled on all of the parties' pretrial motions), the parties reached a settlement of their dispute which they filed under seal. The trial court dismissed the case with prejudice but retained jurisdiction for the limited purpose of enforcing the settlement agreement. Id. at 159-60.
¶ 46 Nine months after the Leucadia litigation was dismissed with prejudice, a stockholder of AET filed a motion to intervene permissively to unseal the documents filed with the trial court. Id. at 160. The stockholder had filed a separate class action suit against AET, alleging that AET and its directors violated federal security laws by making false and misleading statements regarding AET's business prospects, including the failure to disclose adequately the consequences of the Leucadia litigation and settlement, in the prospectus issued by AET. Id. at 160.
¶ 47 The trial court denied the shareholder's motion to intervene. The Third Circuit reversed, remanding the case to the trial court, requiring that AET and/or Leucadia demonstrate continued need for enforcement of the protective order and that the trial court conduct review of the contents of each document. The trial court was then required to balance the interests of the public versus the interests of AET and Leucadia in protecting trade secrets, if any. Id. at 167.
¶ 48 In making its decision to remand for possible opening of sealed judicial records filed with pretrial motions, the court reasoned that "[w]e believe that our earlier decisions and those in other courts lead ineluctably to the conclusion that there is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith." 998 F.2d at 164.[2] This conclusion is in accord with part of the majority's conclusion and I agree with it. Majority at 1192.
¶ 49 The court then explained that it was "reluctant" to extend the federal common law presumption of judicial access to pretrial discovery motions:
In the first place, we cannot overlook the Supreme Court's statements in Seattle Times [Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)], albeit uttered in a different context, that "pretrial deposition and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law and, in general, they are conducted in private as a matter of modern practice." [Seattle Times Co. v. Rhinehart], 467 U.S. at 33, 104 S.Ct. at 2208 (internal citations omitted).[[3]]
In the second place, a holding that discovery motions and supporting materials are subject to a presumptive right of access would make raw discovery, ordinarily inaccessible to the public, accessible merely because it had to be included in motions precipitated by inadequate discovery responses or overly aggressive discovery demands.
Leucadia, 998 F.2d at 164.[4] The court further explained that treating pretrial discovery motions the same as pretrial nondiscovery motions "would be a holding based more on expediency than principle. Moreover, we do not know what the effect would be on the discovery process itself of holding such discovery *1196 presumptively accessible. See Anderson, 805 F.2d at 12 (permitting public access to discovery might actually make the civil discovery process `more complicated and burdensome than it already is.')." Id. at 164-65.
¶ 50 In this case, unlike in Leucadia, we are not faced with documents attached to discovery motions. Here, the only pretrial documents at issue were attached to nondiscovery motions, summary judgment motions and motions in limine. Nonetheless, the court should not adopt a broad new application of a rule without considering the likely consequences. Rather, this court should adopt the Third Circuit's reasoning in Leucadia and hold that any records filed with the court in anticipation of a court decision with regards to a nondiscovery motion should be sealed or continue to be sealed only when the court determines  pursuant to Ishikawa  that there is a compelling reason which overrides the public's right to the open administration of justice. Any records filed with the court in anticipation of a court decision regarding a discovery motion should continue to be governed by the good cause standard. Rhinehart v. Seattle Times Co., 98 Wash.2d 226, 654 P.2d 673 (1982), aff'd, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).
¶ 51 Additionally, the majority fails to address adequately the potential for abuse under its expanded rule.[5] The majority explains that there are two remedies available to a party in the event an opposing party abuses the new rule by attaching documents wholly irrelevant to its motion: (1) sanctions under CR 11 and CR 26(g) and (2) by application of the Ishikawa factors to a motion to seal. Majority at 18-19. While I agree that sanctions are available, their application does not alleviate the actual harm caused to a party due to a bad faith disclosure of confidential documents. Even more importantly, though, the majority's application of the Ishikawa factors in this context is premature.
¶ 52 The threshold question in the case of a challenge to the attachment of a confidential document to a motion should be a relevance determination by the court  not an initial application of the Ishikawa factors. Under ER 402, "All relevant evidence is admissible, except as limited by constitutional requirements or as otherwise provided by statute, by these rules, or by other rules or regulations applicable in the courts of this state." Evidence which is "not relevant is not admissible." Evidence obtained in discovery, however, is much broader. CR 26(b)(1) states that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." CR 26(b)(1) provides further that "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." See also, Seattle Times Co., 467 U.S. at 29-30, 104 S.Ct. 2199 (discussing broad rules of discovery in Washington state).
¶ 53 Absent a relevance determination by the court, the party rightfully seeking to maintain the confidential nature of the document would be forced to meet a "compelling interest" test, clearly not required in the case of abusive behavior by the opposing party. The majority wishfully explains that under the fourth Ishikawa factor, a court should seal a document that one party has attached to a motion when the document has no relevance to the motion because the court will find "that there are little or no valid interests of the party attaching the document to its motion or of the public with respect to disclosure of the document." Majority at 1191. However, the majority's express holding *1197 on page 1192, "[w]e hold that any records that were filed with the court in anticipation of a court decision (dispositive or not) should be sealed or continue to be sealed only when the court determines  pursuant to Ishikawa  that there is a compelling interest which overrides the public's right to the open administration of justice" is in direct conflict with the majority's discussion on pages 1191.
¶ 54 In the case of abusive behavior by one party, the interest in confidentiality necessary to "override" the little to no interest in public access by the abusive party and the public should not be required to be "compelling." As the majority explains, under the fourth Ishikawa factor, there is little to no need of any party in making the document public. Thus, it is inappropriate for the party to be forced to meet the "compelling" interest standard in order to keep the document confidential. Accordingly, the majority should clarify that in the case of a claimed abuse of the discovery process, e.g., when one party attaches an arguably irrelevant confidential document to a motion, the court should first assess the relevance of the document. If the confidential document is irrelevant, the document should remain confidential subject to the good cause standard as set forth in Rhinehart v. Seattle Times Co., 98 Wash.2d 226, 654 P.2d 673 (1982), aff'd, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).
¶ 55 I concur in the result reached by the majority.
BRIDGE, J., concurs.
NOTES
[1] UWMC has realigned itself to join with the Rufers on this issue. UWMC has not participated in the appeal of the first issue.
[2] Although the Rufers had requested that the pretrial confidentiality order be dissolved, Judge Downing said it was unnecessary, and thus answered the third stated issue in the negative, because the "scope [of the pretrial confidentiality order] would no longer encompass those documents previously made public or made public" by the court's present order "(all materials deemed relevant or felt by any counsel to have sufficient arguable relevance to have been put before the court at some juncture in [the] proceedings)." CP at 2851.
[3] As noted by the Rufers, "[t]he publication of a deposition at trial is simply the clerical act of `the breaking of the sealed envelope containing the conditional examination [deposition] and making it available for the use by the parties or the court.'" Pet'r's Suppl. Br. at 17 n.12 (quoting Augustine v. First Fed. Sav. & Loan Ass'n of Gary, 270 Ind. 238, 240, 384 N.E.2d 1018, 1020 (1979)). Washington court rules do not appear to use the term "publication," although the term can be found in several of our state's opinions. See, e.g., Pimentel v. Roundup Co., 100 Wash.2d 39, 41, 666 P.2d 888 (1983); Hall v. Am. Friends Serv. Comm., Inc., 74 Wash.2d 467, 472, 445 P.2d 616 (1968); Case v. Olwell, 1 Wash.App. 766, 767, 463 P.2d 664 (1970).
[4] CR 26(c) provides:

Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the county where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that the contents of a deposition not be disclosed or be disclosed only in a designated way; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.
[5] We have, however, recognized that parties have a right of access in the discovery phase of a trial proceeding. See John Doe v. Puget Sound Blood Ctr., 117 Wash.2d 772, 782, 819 P.2d 370 (1991).
[6] In Allied Daily Newspapers, this court struck down a portion of a bill that required courts to keep information identifying "child victims of sexual assault" out of reach of the public or the press during judicial proceedings and in court records. 121 Wash.2d at 207, 848 P.2d 1258. The court recognized the "compelling" interest in protecting a "child victim from further trauma and harm and to ensure the child's privacy as guaranteed under Const. art. 1, § 7." Id. at 211, 848 P.2d 1258. Nonetheless, the court held the bill was in violation of the open courts provision because it did not allow for the proper balancing standard (Ishikawa) to be applied on a case-by-case basis. Id.
[7] In Dreiling, we quoted the five Ishikawa factors as follows:

1. The proponent of closure and/or sealing must make some showing of the need therefor. Kurtz, [94 Wash.2d] at 62 [615 P.2d 440]. In demonstrating that need, the movant should state the interests or rights which give rise to that need as specifically as possible without endangering those interests.
. . . .
.... Because courts are presumptively open, the burden of justification should rest on the parties seeking to infringe the public's right. See Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 558-59, 569-70, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). From a practical standpoint, the proponents will often be in the best position to inform the court of the facts which give rise to the alleged need for closure or sealing....
2. "Anyone present when the closure [and/or sealing] motion is made must be given an opportunity to object to the [suggested restriction]". Kurtz, [94 Wash.2d] at 62, [615 P.2d 440].
For this opportunity to have meaning, the proponent must have stated the grounds for the motion with reasonable specificity, consistent with the protection of the right sought to be protected. At a minimum, potential objectors should have sufficient information to be able to appreciate the damages which would result from free access to the proceeding and/or records. This knowledge would enable the potential objector to better evaluate whether or not to object and on what grounds to base its opposition.
3. The court, the proponents and the objectors should carefully analyze whether the requested method for curtailing access would be both the least restrictive means available and effective in protecting the interests threatened. See Kurtz, [94 Wash.2d] at 63-64 [615 P.2d 440]. If limitations on access are requested to protect the defendant's right to a fair trial, the objectors carry the burden of suggesting effective alternatives. If the endangered interests do not include the defendant's Sixth Amendment rights, that burden rests with the proponents.
4. "The court must weigh the competing interests of the [parties] and the public," Kurtz, [94 Wash.2d] at 64, [615 P.2d 440], and consider the alternative methods suggested. Its consideration of these issues should be articulated in its findings and conclusions, which should be as specific as possible rather than conclusory. See People v. Jones, 47 N.Y.2d 409, 415, 391 N.E.2d 1335, 418 N.Y.S.2d 359 (1979).
5. "The order must be no broader in its application or duration than necessary to serve its purpose...." Kurtz, [94 Wash.2d] at 64, [615 P.2d 440]. If the order involves sealing of records, it shall apply for a specific time period with a burden on the proponent to come before the court at a time specified to justify continued sealing.
Dreiling, 151 Wash.2d at 913-15, 93 P.3d 861 (quoting Ishikawa, 97 Wash.2d at 37-39, 640 P.2d 716 (some emphasis added, second and third alterations in original)).
[8] This case is unique because, rather than reviewing a trial court's decision to close records, we are reviewing an order that opened all court records. While the Ishikawa factors are used by trial courts to balance all competing fundamental interests, review of a trial court's use of those factors would be most apt when the trial court ordered that one or more records be sealed.
[9] In holding that the trial exhibit could continue to be sealed for good cause, the Court of Appeals failed to explain why the exhibit would not be subject to the same heightened presumption of openness applicable to trial proceedings, holding simply that the trial court "applied the incorrect standard." Rufer, 118 Wash.App. 1080, 2003 WL 22430193, at *15. The Court of Appeals may have been relying on GR 15(c)(2)(B) ("[T]he court may order the sealing of any files and records in the proceeding (i) to further an order entered under CR 12(f) or a protective order entered under CR 26(c)."). The trial court noted that this provision appears to "permit sealing of court records," for less than a showing of a compelling interest, but concluded that "more is required" under the article I, section 10 of the state constitution. CP at 2849.
[10] In fact, this court in Dreiling did not substantively discuss Foltz until the section captioned "ADDITIONAL CONSIDERATIONS," which was located after the portion of the Dreiling opinion that determined the proper standard applicable to dispositive motions. 151 Wash.2d at 916, 93 P.3d 861. This section dealt with the procedure trial courts should use when confronted with motions to seal. The court had already determined the standard applicable to the closure of dispositive motions without reference to Foltz. The only reference to Foltz in the section where the court was determining the proper standard occurred when we noted that the Ninth Circuit requires particularized showings as to each document a party requests to be sealed. See Dreiling, 151 Wash.2d at 912, 93 P.3d 861.
[11] Abbott makes the argument that Dreiling and Ishikawa should not apply in this case because, "in sharp contrast to Dreiling  this case does not involve a blanket protective order agreed to by the parties," and, as the producing party, Abbott did not use confidential documents to support a dispositive motion. Abbott Labs. Suppl. Br. at 15. But then Abbott concedes in the next footnote that "Abbott did attach certain deposition transcripts to its summary judgment motions, portions of which had been designated confidential but were not relevant to the dispositive issue." Id. at 15 n. 6. Contrary to Abbott's argument, it was not entitled to "reasonably expect[] [that] the Confidentiality Order" would protect those confidential passages of the deposition transcripts it attached to its own summary judgment motions that it claims were not relevant to the dispositive issue. Id.; see CR 26(h) ("A party filing discovery materials on order of the court or for use in a proceeding or trial shall file only those portions upon which the party relies.").

Further, there is nothing in Dreiling to suggest we intended to limit the application of Ishikawa and the compelling interest test to situations where there was a "blanket protective order agreed to by the parties." In fact, restricting Dreiling to that limited set of facts would undermine the constitutional principle of openness.
[12] Two responses to the Court of Appeals' cursory rationale bear mentioning, although technically they are irrelevant to the question of whether there was any authority to deviate from the statutory interest requirement. First, arguably, the RAP 9.11 motion was not entirely "unsuccessful" because, although the commissioner did not allow the record to be supplemented, he did allow the parties to supplement their briefing with the previously undisclosed information, reasoning that "[b]ut for Abbott's oversight in the pre-trial discovery, the jury might have been presented a more accurate background regarding the history of false positives and interaction between the FDA and Abbott." Pet. for Review, App. J at 6. Second, although the Court of Appeals appears to assign blame to UWMC and the Rufers for the delay in the appeal, much of the "delay" was caused by Abbott's discovery of materials that should have been disclosed much earlier. Abbott did the right thing by disclosing these materials once it found them, but one cannot expect the other parties to simply accept that disclosure without exploring whether such materials warrant RAP 9.11 relief.
[1] See Leucadia, Inc. v. Applied Extrusion Techs., Inc., 755 F.Supp. 635 (D.Del.1991) (denying AET's motion to dismiss complaint in entirety or for a more definitive statement, dismissing one count of Leucadia's complaint, and granting AET's motion for a protective order, temporarily postponing Leucadia's discovery of AET while AET conducted discovery relating to Leucadia's trade secrets).
[2] The court determined that the following documents and attached documents "were not merely motions relating to discovery" (i.e., were nondiscovery motions): (1) material filed in connection with Leucadia's motion for a preliminary injunction; (2) material filed in connection with AET's motion to dismiss for a more definitive statement; (3) an exhibit to Leucadia's first amended complaint; and (4) material filed in connection with AET's motion for preclusion of evidence. Id. at 163-64.
[3] The Supreme Court in Seattle Times Co., went on to point out that "[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action." 467 U.S. at 33, 104 S.Ct. 2199.
[4] The court determined that the following documents were related to discovery motions: (1) materials submitted with respect to AET's motion to compel production of documents and answers to interrogatories and (2) Leucadia's motion to shorten time for production of documents. Leucadia at 164.
[5] While the majority writes that "it is overly cynical to presume that parties will act vindictively and abusively" in court proceedings, it is beyond dispute that abuses in discovery process are not uncommon. Majority at 1191. See e.g., Seattle Times, 467 U.S. at 34, 104 S.Ct. 2199 ("It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse.").