[Nos. 38425-6-II; 38596-1-II.   Division Two.   December 17, 2010.]

JAMES SHARBONO ET AL., *Respondents*, v. UNIVERSAL
UNDERWRITERS INSURANCE COMPANY, *Appellant*,
LEN VAN DE WEGE ET AL., *Defendants*,
CLINTON L. TOMYN ET AL.,
*Respondents*.

964

*Jacquelyn A. Beatty*; *Philip A. Talmadge* (of *Talmadge/ Fitzpatrick*); and *Dan'L W. Bridges* (of *McGaughey Bridges Dunlap PLLC*), for appellant.

*Timothy R. Gosselin* (of *Gosselin Law Office*), for respondents Sharbono et al.

*Benjamin F. Barcus* and *Paul A. Lindenmuth* (of *Ben F. Barcus & Associates PLLC*) for respondents Tomyn et al.

¶1 HUNT, J. — This appeal concerns interest owed on a settlement reduced to judgment in a lawsuit filed by the family of wife and mother Cynthia L. Tomyn, who died as a result of a 1998 vehicle collision caused by James and Deborah Sharbono's 16-year-old daughter, Cassandra. The Sharbonos assigned to the Tomyns benefits payable by the Sharbonos' insurance carriers. One of those carriers, Universal Underwriters Insurance Company, appeals the trial court's calculation of postjudgment interest on remand from an earlier appeal in this case and other aspects of a 2005 jury's damages verdict and judgment.

¶2 Universal argues that the trial court erred by calculating interest twice; it also challenges several terms of the 2005 judgment. On cross appeal, the Sharbonos argue that the trial court erred by awarding postjudgment interest to the Tomyn family, instead of to them. We affirm the trial court's designation of the Tomyns as recipients of postjudgment interest; but we vacate the amount of the interest award and remand for recalculation of interest on the May 20, 2005 judgment principal at a rate of 12 percent per year, from May 20, 2005, until Universal pays it.

## FACTS

### I. 2001 Judgment (Settlement), 2005 Judgment (Jury Trial), and First Appeal

¶3 We glean the following facts from our published opinion in a previous appeal in this case, *Sharbono v. Universal Underwriters Insurance Co.*, 139 Wn. App. 383, 388-89, 161 P.3d 406 (2007), *review denied*, 163 Wn.2d 1055, 187 P.3d 752 (2008):

> Cassandra Sharbono lost control of her truck, crossed into the oncoming traffic lane, and hit a car Cynthia Tomyn was driving. Cynthia Tomyn died as a result of the accident and her family claimed damages against Cassandra's parents, James and Deborah Sharbono, who owned the vehicle Cassandra was driving. The Sharbonos had primary liability coverage with State Farm Insurance Company and umbrella coverage under their commercial and personal liability policies with Universal Underwriters Insurance Company. The Sharbonos claimed that they had three umbrella policies; Universal advised them they had only one umbrella policy with a $1,000,000 limit. During settlement negotiations with the Tomyns, the Sharbonos several times asked Universal to produce its underwriting file so that they and the Tomyns would know the extent of the Sharbonos' liability coverage. Universal refused. The Tomyns and the Sharbonos ultimately settled for $4,525,000,[1] and the Sharbonos then sued Universal to establish coverage and to recover damages for Universal's alleged bad faith in refusing to produce its underwriting file.[2]

---

[1] On March 30, 2001, the Pierce County Superior Court entered a "Judgment by Confession" in favor of the Tomyns against the Sharbonos in *Tomyn v. Sharbono*, Cause No. 99-2-12800-7. *See* Clerk's Papers (CP) at 236, 81, 83, para. 1.

[2] As part of the settlement, the Sharbonos "agreed . . . to assign their insurance claims to the Tomyns." 139 Wn. App. at 392; *see* "Settlement Agreement," CP at 235-39.

¶4 Following a jury trial in the Sharbonos' lawsuit against Universal,[3] on May 20, 2005, the trial court reduced to judgment Universal's $3.275 million share of the $4.525 million Sharbono-Tomyn settlement.[4] This judgment included the following pertinent terms:

> 1. Judgment is hereby entered in favor of [Sharbonos] and against [Universal] in the amount of . . . $3,275,000.00, together with interest that has accrued thereon since the date of entry, March 30, 2001, which, as of May 13, 2005, (four years, 43 days @ 12%/yr.) totals $1,618,298.63, and together with interest that continues to accrue thereon as set forth in said judgment until said judgment is paid.
>
> . . . .
>
> 7. Amounts awarded pursuant to paragraph 1 shall bear post-judgment interest pursuant to RCW 4.56.110(4) and RCW 19.52.020 at the rate of 12 percent per annum.

Clerks Papers (CP) at 83.

¶5 On appeal in 2007, Universal did not assign error to this $3.275 million verdict, together with interest (totaling $4,893,298.63 as of May 13, 2005[5]), and we affirmed. We also vacated the jury's award of $4.5 million in damages to the Sharbonos against Universal and remanded for further proceedings.

---

[3] *Sharbono v. Universal Underwriters Ins. Co.*, No. 01-2-07954-4 (Pierce County Super. Ct. Wash. Oct. 3, 2008).

[4] This $1.250 million reduction represents policy limits previously acknowledged and paid by the Sharbonos' insurance carriers: Primary insurer State Farm had paid $250,000; and Universal had paid $1 million under an umbrella policy. This reduction is outside the scope of this appeal.

In our previous opinion, we vacated other findings of liability against Universal. 139 Wn. App. at 389. These findings, however, also remain outside the scope of this appeal.

[5] We note that the 2005 trial court entered judgment on May 20, 2005. But, in the language of the judgment itself, the 2005 trial court calculated prejudgment interest only until May 13, 2005. *See* CP at 9. As we explain above, the trial court should have calculated prejudgment interest at an annual rate of 12% from March 30, 2001, to May 20, 2005, not May 13, 2005.

## II. 2008 Remand from First Appeal

¶6 On remand on October 3, 2008, the trial court granted the Sharbonos' motion to execute on Universal's appeal bond[6] and ordered Ohio Casualty Insurance Company, Universal's appeal bond surety, to pay $6,240,265.75 under paragraph 1 and $2,353,956.28 under paragraph 7 of the May 2005 judgment.[7] In reaching these figures, the trial court compounded part of the interest: Under paragraph 1 of the 2005 judgment, the trial court calculated simple 12% interest on the original $3.275 million March 30, 2001 judgment, accruing from March 30, 2001, until October 15, 2008, for a total of $6,240.265.75; we refer to this interest as the "pre-2005 judgment interest." Under the first sentence of paragraph 7 of the 2005 judgment, the trial court applied 12% "post-judgment" interest[8] to this new paragraph 1 total, accruing from entry of the May 20, 2005 judgment until October 15, 2008, for an additional sum of $2,353,956.28,[9] CP at 333; we refer to this interest as "post-2005 judgment interest." The trial court designated the Tomyns[10] to receive the judgment amount plus all of the accrued interest. On November 7, the trial court struck Universal's CR 60 motion to vacate and/or to amend the May 20, 2005 judgment and October 3, 2008 order.

---

[6] In August 2008, the Tomyns moved to intervene. The trial court allowed the Tomyns limited intervention "to represent [their] interests as [relating] to [the 2005 judgment], and protection of their interests in said judgment." CP at 160.

[7] The trial court received differing expert interest calculation reports from the Sharbonos' certified public accountant (CPA) and Universal's CPA. The trial court ultimately used the Sharbonos' CPA's calculations. *See* CP at 213, 332.

[8] CP at 83, para. 7.

[9] *See* the Sharbonos' CPA's report ("[T]he determination of the principle [sic] judgment amount for purposes of paragraph I merely requires simple interest . . . to be calculated on [$3.275 million] from March 30, 2001 to October 15, 2008 [and then] [p]ursuant to paragraph 7, the principle [sic] amount of judgment then is subject to post-judgment simple interest at a rate of 12% per annum from May 20, 2005 to the present."). CP at 212-13.

[10] The Tomyns were "the plaintiffs in Pierce County cause no. 99-2-12800-7 . . . , whom the judgment creditors [Sharbonos] have designated to receive such payment." CP at 333.

### III. Second Appeal

¶7  On October 6, Universal appealed the October 3, 2008 order; on October 17, the Sharbonos cross-appealed. On November 20, Universal filed a separate appeal from the trial court's November 7 denial of its CR 60 motion. We consolidated these two appeals under RAP 3.3(a).

¶8  In February 2009, we entered an order narrowing the scope of Universal's appeal, allowing it to "challenge [only] the trial court's calculation of post-judgment interest." In so doing, we expressly ruled that Universal could not challenge the $3.275 million judgment, which we had affirmed in the previous appeal in 2007.[11] Nevertheless, Universal attempts to appeal several aspects of the $3.275 million judgment in addition to the trial court's 2008 pre-2005 judgment interest calculation on remand in 2008.

¶9  We filed an unpublished opinion in this case on August 5, 2010. In response to the Sharbonos' and the Tomyns' motions for reconsideration, we withdraw our August 5 opinion and file this partially amended opinion.

### ANALYSIS

#### I. Scope of Appeal

¶10  In our February 4, 2009 order, we specifically limited Universal's appeal from the 2005 judgment to the method and manner used to calculate interest:[12]

---

[11] *See* Am. Order Granting in Part and Denying in Part Resp't's Mot. to Modify *Sharbono v. Universal Underwriters Ins. Co.*, No. 38425-6-II (Wash. Ct. App. Feb. 4, 2009) (our commissioner's ruling denying motion to dismiss and request for accelerated review).

[12] *See* Am. Order Granting in Part and Denying in Part Resp't's Mot. to Modify, *supra* ("Universal may challenge [only] the trial court's calculation of post-judgment interest on appeal."). As intervenor Tomyn stated, "[A]ll that is left is simply how the trial court went about doing its math." Intervenor Resp. Br. at 11.

Universal may challenge the trial court's calculation of post-judgment[13] interest on appeal. It may not, however, challenge the $3.275 million judgment, which this court affirmed in the previous appeal [139 Wn. App. at 424].

*See* Am. Order Granting in Part and Denying in Part Resp't's Mot. to Modify *Sharbono v. Universal Underwriters Ins. Co.*, No. 38425-6-II (Wash. Ct. App. Feb. 4, 2009).

■■ ¶11 As we previously noted in our 2007 opinion in this case, Universal failed to challenge the $3.275 million judgment or its terms in its earlier appeal. *Sharbono*, 139 Wn. App. at 424 ("Because Universal did not assign error to the directed verdict in the amount of $3,275,000, together with interest, *we affirm that judgment . . . .*" (emphasis added)). Universal, therefore, may not challenge the $3.275 million judgment amount, the interest rate applied to that judgment, or the date of judgment the trial court used on remand in 2008 to calculate postjudgment interest, which terms Universal could have challenged in its previous appeal.[14] We agree with the Sharbonos that "Universal has no basis for re-visiting that part of the judgment affirmed by this court." Br. of Resp't/Cross-Appellant at 10-11. For the same reasons, Universal's appeal from the trial court's denial of its CR 60 motion to reconsider its 2005 judgment also fails.[15] Accordingly, of Universal's several arguments

---

[13] In our February 4, 2009 order, we described Universal's challenge as an attack on the "post-judgment" interest. In our amended opinion that we file today, however, we characterize the 2008 trial court's fundamental error as its pre-2005 judgment interest calculation. Nevertheless, in so doing, the 2008 trial court also erred in calculating the post-2005 judgment interest to the extent that it based this interest calculation on an excessively large judgment principal, which it had derived from erroneously folding post-2005 judgment interest into the new 2005 judgment principal in the process of calculating what was supposed to have been only pre-2005 judgment interest. But this excessively large judgment principal was a consequence of the 2008 trial court's error in calculating pre-2005 judgment interest.

[14] The doctrine of collateral estoppel bars relitigation of issues that have already been, or could have been, determined in a prior judicial forum. *See Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 507, 745 P.2d 858 (1987).

[15] In addition, in light of our 2007 opinion and the doctrine of collateral estoppel, Universal's passing treatment of this issue fails to persuade us to address this argument further.

on appeal, we reach only those relating directly to the trial court's calculation of interest on remand in 2008.

## II. CALCULATION OF INTEREST

¶12 Universal argues that, in entering judgment on remand from the first appeal in 2008, the trial court erred in calculating interest on the 2005 judgment. To the extent that the 2008 trial court twice applied interest to the period between May 20, 2005, and October 15, 2008, we agree.

■ ■ ¶13 We review the trial court's calculation of interest for abuse of discretion. *Steele v. Lundgren*, 96 Wn. App. 773, 787, 982 P.2d 619 (1999), *review denied*, 139 Wn.2d 1026, 994 P.2d 846 (2000). Although the law "does not favor compound interest," RCW 4.56.110 authorizes a trial court to calculate postjudgment interest on a judgment that already contains within it both principal and interest, especially where a written underlying contract so provides.[16] *Xebek, Inc. v. Nickum & Spaulding Assocs.*, 43 Wn. App. 740, 743, 718 P.2d 851 (1986). Citing *Xebek* and RCW 4.56.110, we, too, have held that, when prejudgment interest is added to a judgment, that prejudgment interest becomes part of a new judgment principal; postjudgment interest is then calculated based on this new judgment principal. *State v. Trask*, 98 Wn. App. 690, 695-97, 990 P.2d 976 (2000). As *Xebek* and *Trask* authorized, the 2008 trial court on remand correctly combined the unpaid portion of the 2001 original confession judgment with pre-2005 judgment interest thereon into a new principal, which the trial court then reduced to the new 2005 judgment.[17] After entry

---

[16] RCW 4.56.110 "effectively mandates postjudgment interest upon interest included in the judgment." *Xebek, Inc. v. Nickum & Spaulding Assocs.*, 43 Wn. App. 740, 743, 718 P.2d 851 (1986).

[17] The 2001 confession judgment expressly provided for postjudgment interest of 12 percent per year. Therefore, the pre-2005 judgment interest that ran on the remaining unpaid 2001 $3.275 million judgment principal from March 30, 2001, to May 20, 2005, can be characterized as both post-2001 confession judgment interest and pre-2005 judgment interest, even though it generated a single amount of interest for this period.

of the 2005 judgment, RCW 4.56.110(4) authorized separate post-2005 judgment interest on this new judgment at 12 percent per year until Universal pays the 2005 judgment.

¶14 Although we allow the calculation of post-judgment interest on a judgment principal that comprises the original principal plus prejudgment interest, the 2008 trial court here erred in the manner in which it calculated the pre-2005 judgment interest. Here, there were effectively two judgments: (1) the 2001 confession judgment against Sharbono; and (2) the 2005 trial court judgment that obligated Universal to pay the unpaid portion of Sharbono's confession judgment. Between March 30, 2001, and May 20, 2005, simple pre-2005 judgment interest at a rate of 12 percent per year was accruing on the 2001 confession judgment $3.275 million principal. When the trial court entered the judgment against Universal on May 20, 2005, pre-2005 judgment interest stopped running on the 2001 confession judgment $3.275 million principal. The 2008 trial court erred by assuming that the pre-2005 judgment interest continued to run even *after* it entered the May 20, 2005 judgment and by calculating pre-2005 judgment interest from March 30, 2001, through October 15, 2008, instead of stopping this interest calculation as of May 20, 2005. By allowing the pre-2005 judgment interest to run from March 30, 2001, to October 15, 2008, the trial court calculated the pre-2005 judgment interest at $2,965,265.75.[18] The trial court should have stopped calculating the pre-2005 judgment interest as of May 20, 2005.

¶15 To summarize, on October 3, 2008, on remand from the previous appeal, the trial court should have calculated pre-2005 judgment interest under paragraph 1 of the 2005

---

[18] See report of the Sharbonos' CPA:

[T]he determination of the principle [sic] judgment amount for purposes of paragraph 1 merely requires simple interest . . . to be calculated on [$3.275 million] from March 30, 2001 to October 15, 2008 [and then] [p]ursuant to paragraph 7, the principle [sic] amount of judgment then is subject to post-judgment simple interest at a rate of 12% per annum from May 20, 2005 to present.

CP at 212-13.

judgment from March 30, 2001, to May 20, 2005, and then combined that pre-2005 judgment interest with the original $3.275 million 2001 confession judgment principal, for a total new 2005 judgment principal. Then, the trial court should have applied post-2005 judgment interest under paragraph 7 of the 2005 judgment and RCW 4.56.110(4) to this new 2005 principal from May 20, 2005, to October 15, 2008. Holding that the trial court erred in its calculation of interest in part, we remand (1) to recalculate the pre-2005 judgment interest that Universal owes on the 2001 confession judgment principal of $3.275 million using an annual rate of 12 percent simple interest from March 30, 2001 to May 20, 2005; (2) to combine that pre-2005 judgment interest with the $3.275 million principal to form a new 2005 judgment principal; and (3) to calculate the post-2005 judgment interest on that new 2005 judgment principal using an annual rate of 12 percent simple interest from May 20, 2005 until Universal pays in full.[19]

### III. Cross Appeal, Assignment of Interest

¶16 On cross appeal, the Sharbonos argue that they, not the Tomyns, are entitled to the post-2005 judgment interest accruing on the judgment against Universal. We disagree.

■ ■ ¶17 In their settlement of the Tomyns' lawsuit against them, reduced to judgment in 2001, the Sharbonos assigned to the Tomyns "[t]he benefits payable under any liability insurance policy, which, because of an act of bad faith, Universal is estopped to deny or deemed to have sold to [the Sharbonos]." CP at 128. This assignment included the postjudgment interest payable on a judgment arising from those benefits. We find unpersuasive the Sharbonos' arguments that they are entitled to interest.

---

[19] In the Sharbonos' and Tomyns' motions for reconsideration and Universal's answer to those motions, all parties agree that the 2008 trial court erred in its pre-2005 judgment interest calculation. Additionally, all the parties agree that, on remand, the trial court should apply post-2005 judgment interest at rate of 12 percent to the new 2005 judgment principal from May 20, 2005, until Universal satisfies the judgment.

¶18 The purpose of interest is to provide compensation for the "lost value of money" to the party to whom it was "properly attributable." *Rufer v. Abbott Labs.*, 154 Wn.2d 530, 552, 114 P.3d 1182 (2005). Here, the judgment and, thus, the interest were "properly attributable" to the Tomyns, not the Sharbonos.

¶19 We affirm the designation of the Tomyns as recipients of all judgment interest. We vacate the amount of the interest award and remand for recalculation of: (1) pre-2005 judgment interest; (2) the new 2005 judgment principal; and (3) the post-2005 judgment interest accruing on the new 2005 judgment principal until Universal pays it.

BRIDGEWATER and VAN DEREN, JJ., concur.

After modification, further reconsideration denied January 19, 2011.