[No. 84903-0.   En Banc.]
Argued October 18, 2011.     Decided January 10, 2013.

RONDI BENNETT ET AL., *Plaintiffs*, D. EDSON CLARK, *Petitioner*, v. SMITH BUNDY BERMAN BRITTON, PS, ET AL., *Respondents*.

*Michele Lynn Earl-Hubbard* (of *Allied Law Group LLC*), for petitioner.

*Valerie A. Villacin* and *Catherine Wright Smith* (of *Smith Goodfriend PS*); and *Barbara L. Schmidt* and *Mary C. Eklund* (of *Preg O'Donnell & Gillett PLLC*), for respondents.

*Katherine George* on behalf of Allied Daily Newspapers of Washington and Washington Newspaper Publishers Association, amici curiae.

*Jeffrey A.O. Freimund* on behalf of Washington Society of Certified Public Accountants, amicus curiae.

¶1 CHAMBERS, J.* — Article I, section 10 of the Washington State Constitution declares, "Justice in all cases shall be administered openly, and without unnecessary delay." Un-

---

* Justice Tom Chambers is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

der this straightforward directive, court records that become part of the administration of justice may be kept from the public only upon a showing of some compelling need for secrecy. But not all records are subject to this constitutional command. Documents obtained through the discovery process may be sealed for mere good cause shown. This good cause standard helps protect sensitive information, including information of nonparties, that might never be used in litigation. However, once material becomes part of the administration of justice, article I, section 10 requires disclosure unless a party shows a more compelling need for secrecy than mere good cause.

¶2 The case before us was settled before the trial court made any decision. We must decide if records sealed for good cause and submitted in support of a motion that was never decided became part of the administration of justice and are thus presumptively public. We affirm the Court of Appeals, *Bennett v. Smith Bunday Berman Britton, PS*, 156 Wn. App. 293, 234 P.3d 236 (2010), and hold that only material relevant to a decision actually made by the court is presumptively public under article I, section 10. In the absence of a decision by the court, the records in question here are not part of the administration of justice and may remain sealed for good cause.

## FACTS

¶3 This case illustrates how litigation may take unexpected twists and turns. The case began as a marriage dissolution. The firm Smith Bunday Berman Britton PS (Smith Bunday) provided accounting services to Todd and Rondi Bennett during their divorce. Rondi Bennett and her father, Gerald Horrobin, owned businesses jointly with Todd Bennett. Smith Bunday also provided accounting services for those businesses. Rondi and Gerald (for the sake of clarity we will refer to these parties collectively as Horrobin) filed suit against Smith Bunday, alleging it had

aided Todd Bennett in embezzling and hiding money that belonged to Horrobin. As part of discovery, the plaintiffs requested tax records of nonparties to the suit. Smith Bunday objected to the discovery on the ground that it was prohibited by law from revealing a person's tax information without that person's consent.

¶4 To resolve the confidentiality problem, the plaintiffs proposed a protective order. The order, stipulated to by both parties and signed by the trial judge, permitted the parties to stamp any documents they produced as "confidential." Such documents, according to the protective order, could then be used in conjunction with briefs, motions, and other court filings only if the documents were filed separately under seal.

¶5 On October 7, 2008, Smith Bunday filed a motion to dismiss all of the plaintiffs' claims on summary judgment. On October 29, Horrobin moved to remove certain documents from the protective order so they could be attached unsealed to the plaintiffs' response to the summary judgment motion. In particular, Horrobin wanted to attach some of the documents marked "confidential" to a declaration of the plaintiffs' expert witness, Ed Clark, in support of the response. The trial court ordered that the documents should be filed under seal first, and then upon receipt, the court would examine them and determine whether they should remain subject to the protective order. On November 14, 2008, Horrobin filed the response to the summary judgment motion and Clark's supporting declaration.

¶6 Just a few hours after the response was filed and before the court had examined either the summary judgment motion or response, the parties settled the case. Smith Bunday notified the court that the case had been settled and that its summary judgment motion should be removed from the calendar.

¶7 Settlement did not bring resolution. Smith Bunday noticed that Horrobin's response and supporting declaration contained or made reference to documents that had

been stamped "confidential," but Horrobin had not filed them under seal as required by the stipulated protective order. This was apparently accidental. After discussing the matter, and despite the fact the case had settled, the parties stipulated the plaintiffs would refile redacted and sealed versions of the response and declaration in accordance with the stipulated protective order.

¶8 The plaintiffs' expert, Clark, who wrote the declaration in support of the response to summary judgment, moved to intervene. He asserted his right as a member of the public to open access to court records, opposed the refiling under seal, and moved to unseal other documents in the case already filed under seal.[1] The trial court granted his motion to intervene but denied his motion to unseal. Clark appealed, and the Court of Appeals upheld the trial court's order. Clark petitioned this court, and we accepted review.

## ANALYSIS

### STANDARD OF REVIEW

¶9 A trial court's decision to seal records is reviewed for abuse of discretion. *Dreiling v. Jain*, 151 Wn.2d 900, 907, 93 P.3d 861 (2004) (citing *King v. Olympic Pipe Line Co.*, 104 Wn. App. 338, 348, 16 P.3d 45 (2000)). But the proper standard governing the sealing of court records is a legal question we review de novo. *Rufer v. Abbott Labs.*, 154 Wn.2d 530, 540, 114 P.3d 1182 (2005). If the trial court reached its decision by applying an improper legal standard, we will remand to the trial court to apply the correct rule. *Id.*

---

[1] Clark's motivation for intervening after the settlement is not entirely clear. He asserts in his brief that he intervened in this case "when he realized after a settlement that numerous court filings were sealed and everything was about to go underground." Appellant's Suppl. Br. at 2-3. Whatever Clark's motivation, it is not relevant to our resolution of this case.

PRESUMPTION OF PUBLIC ACCESS

¶10 There are, for purposes of the case before us, two different standards for sealing documents. "Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984). Such information may implicate privacy interests of both litigants and nonparties. To protect such interests, "[b]ecause of the liberality of pretrial discovery[,] . . . it is necessary for the trial court to have the authority to issue protective orders." *Id.* at 34. Thus, under our civil rules, parties may seal discovery material "for good cause shown." CR 26(c).

¶11 At some point, material that is sealed for good cause during discovery may become part of the administration of justice, and at that point, a stricter standard of sealing must be applied. A party may, for example, file material sealed for good cause in discovery along with and in support of a motion. We have recently decided several cases addressing the effect of such filing on the public's right of access to the records.

¶12 Not long ago we held in *Dreiling*, in accordance with federal case law, that documents filed in support of dispositive motions, such as a motion for summary judgment, cannot remain sealed under a mere good cause standard; rather, they become presumptively public. *Dreiling*, 151 Wn.2d at 909-10, 915. We explained that presumptive publicity was guaranteed by article I, section 10 of our state constitution, which provides the public a right of access to court documents as well as a right of physical access to courtroom proceedings. *Id.* at 908-09 (citing CONST. art. I, § 10). Article I, section 10 applies and renders documents presumptively public when the documents cross the line from "unfiled discovery" to "documents filed with the trial court in support of a motion that can potentially dispose of

a case." *Id.* at 912 (emphasis omitted). We ultimately held that where article I, section 10 applies to documents, courts must engage in an *Ishikawa* analysis[2] to determine whether sealing is permissible. *Id.* at 915.

¶13  In *Rufer*, 154 Wn.2d at 549, we went further, holding that "any records that were filed with the court in anticipation of a court decision (dispositive or not) should be sealed or continue to be sealed only when the court determines—pursuant to *Ishikawa*—that there is a compelling interest which overrides the public's right to the open administration of justice." The difference between *Rufer* and *Dreiling* is that *Rufer* dropped the "dispositive" distinction and required an *Ishikawa* analysis for sealing documents filed with the court in anticipation of any decision. We conceded this went beyond the federal cases but noted that our unique open courts provision provided "good reason to diverge from federal open courts jurisprudence." *Id.* Thus, *Rufer* provided an extra level of protection for the openness of our courts but did not alter the underlying principles we established in *Dreiling*.

¶14  In the case before us, we are asked to extend the constitutional command that "[j]ustice in all cases shall be administered openly" to documents submitted in anticipation of a ruling by a court that was never made. WASH. CONST. art. I, § 10. Perhaps more broadly, the question before us is: does the act of filing documents with the court itself render the documents presumptively public?

¶15  As we pointed out in *Dreiling*, "Our founders did not countenance secret justice. '[O]perations of the courts and the judicial conduct of judges are matters of utmost public concern.' " *Dreiling*, 151 Wn.2d at 908 (alteration in original) (quoting *Landmark Commc'ns, Inc. v. Virginia*, 435

---

[2] In *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 37-39, 640 P.2d 716 (1982), we held that the public's right of access to court records may be limited only if the proponent of secrecy can show a compelling need for sealing. Whether sealing is warranted turns on a five factor test intended to balance the public's right of access against other countervailing interests. *Id.*

U.S. 829, 839, 98 S. Ct. 1535, 56 L. Ed. 2d 1 (1978)). The public, including the press, is entitled to be informed as to the conduct of the judiciary and judges. Scrutiny by the public is a check on the conduct of judges and of the power of the courts. But the act of filing a document does not alone transform the document into a public one. The key to distinguishing information to which article I, section 10 applies is not the act of filing, but whether or not the information becomes "part of the court's decision-making process." *Id.* at 909-10. Simply put, information that does not become part of the judicial process is not governed by the open courts provision in our constitution.

RELEVANCE TO THE MERITS

¶16 What, then, does it mean for information to become part of the court's decision making process? *Rufer* provides a partial answer: relevancy to the motion before the court. In *Rufer*, we expressly considered a scenario in which parties "use the motions and pleadings process to embarrass or harass other parties by attaching confidential documents produced by other parties which may not be relevant to the underlying motion." *Rufer*, 154 Wn.2d at 547. One of the parties in *Rufer* argued that it would be "unfair that those documents would be entitled to a strong presumption of openness by virtue of their attachment to a dispositive motion." *Id.* We explained that documents irrelevant to the merits of a case are, on balance, not subject to disclosure:

> We have already held that article I, section 10 is not relevant to documents that do not become part of the court's decision making process. *Dreiling*, 151 Wn.2d at 909-10. Thus, if a record is truly irrelevant to the merits of the case and the motion before the court, the court would not consider the document in evaluating the motion before it, and in applying *Ishikawa* it would likely find that sealing is warranted. As long as the opposing party has a valid interest in keeping the information confidential, there is very little, if any, interest of

the public or the moving party to balance against that asserted interest.

*Id.* at 548. *Rufer* here plainly states article I, section 10 applies only to documents relevant to the merits of the motion before the court. Further, *Rufer* explains that applying *Ishikawa* to irrelevant documents is appropriate because when *Ishikawa* is applied to truly irrelevant documents, the test always comes out in favor of nondisclosure. Thus, *Rufer* is clear that the public has no constitutional interest under article I, section 10 in documents not relevant to the merits of a motion.

## RELEVANCE TO A DECISION

¶17 Relevancy to the merits of the motion is not the end of the story. *Rufer* establishes that documents must be relevant to the merits of a motion to be subject to the public's article I, section 10 interest. But this condition of relevancy is only necessary, not sufficient. Filing documents, whether relevant or irrelevant, does not alone make the documents part of the court's decision making process. In order for documents to become part of the decision making process, there must be a decision.

¶18 Documents filed with the court that do not become part of the decision making process of the judge and are unrelated to the conduct of the judiciary do not implicate article I, section 10. Both *Dreiling* and *Rufer* confirm this view. In *Dreiling*, we held that article I, section 10 does not apply to information that "does not become part of the court's decision-making process." *Dreiling*, 151 Wn.2d at 910. Similarly, in *Rufer*, we held that openness requires the public "be afforded the ability to witness the *complete* judicial proceeding, including all records the court has considered in *making any ruling*, whether 'dispositive' or not." *Rufer*, 154 Wn.2d at 549 (emphasis added).

¶19 Here, as in *Dreiling* and *Rufer*, some conduct by the judge or judiciary is necessary for the public's constitutional

interest in the proceedings to arise.[3] The public right of access does not arise only because documents are relevant with respect to a motion in support of which they are filed. As we stated in *Rufer*, "if a record is truly irrelevant to the merits of the case and the motion before the court, the court would not consider the document in evaluating the motion before it." *Id.* at 548. Irrelevant documents are not subject to article I, section 10 precisely because such documents would not be considered during the decision making process. Documents therefore must ultimately be relevant to the decision of the court on the merits of the motion, not merely to the motion itself, for article I, section 10 to apply.

¶20 We hold that only material relevant to a decision or other conduct of a judge or the judiciary is subject to a presumption of public access under article I, section 10. Because the public has no constitutionally guaranteed interest in material truly irrelevant to any actual decision, such as the material at issue here, an *Ishikawa* analysis will invariably favor nondisclosure of irrelevant material.

## *ISHIKAWA*'S FIVE PART TEST

¶21 The open administration of justice has been the subject of several of this court's opinions in recent years. It is, for example, incumbent upon the trial judge not to close the courtroom to the public without full consideration of the factors enumerated in *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). *See also In re Pers. Restraint of Orange*, 152 Wn.2d 795, 804-05, 100 P.3d 291 (2004). The trial judge has a similar responsibility relating to the public's right of access to documents filed with the court. We have very liberal rules of discovery. In reality, parties

---

[3] By using the term "conduct," we do not mean to suggest that only an affirmative act by the court in relation to documents renders them public. The meaning of "conduct" is broad and can include omissions and failures to act. BLACK'S LAW DICTIONARY 336-37 (9th ed. 2009). There may be other circumstances where the conduct of the judiciary as a whole could well create a constitutional public interest in certain relevant records.

are required to produce many more records than are ultimately relevant to the specific issues before the court. "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." CR 26(b)(1). Often, billings, claims files, incident reports, accident reports, or, as in this case, the personal financial information of people who have no meaningful connection to the litigation are subject to discovery.

¶22 The public's right to the open administration of justice does not automatically grant the public a right to see all documents produced during the discovery process, or even all those filed with the court. Documents may be privileged, contain proprietary trade secrets, or may simply contain sensitive information such as medical records, Social Security numbers, or the identities of victims. Both parties to the litigation and nonparties may have significant interests in maintaining such records' confidentiality. As when a courtroom is closed, it falls to the trial judge to assure the many interests and rights implicated by the potential disclosure of documents are properly considered.

¶23 The tool we have provided to the trial courts for balancing the public's right of access against privacy interests is the five part test we laid down in *Ishikawa*, 97 Wn.2d at 36. *Ishikawa*, decided 30 years ago, involved a murder trial, the closure of a courtroom during a pretrial motion, and the sealing of the transcript of that motion. We take this opportunity to review those factors in the context of sealing or unsealing records previously sealed for good cause in a civil case such as the one before us.

1. *The proponent of closure and/or sealing must make some showing of the need therefore*

¶24 The burden is upon the party seeking closure to state the interests or rights giving rise to a need for secrecy. *See Rufer*, 154 Wn.2d at 544. Application of this first *Ishikawa* factor will be simple if the trial court follows the procedures we laid out for sealing discovery in *Dreiling*.

¶25 In *Dreiling*, we expressly adopted the position of the Ninth Circuit Court of Appeals that blanket protective orders are to be discouraged and that the proponent of sealing must make a good cause showing for each individual document it seeks to protect. *Dreiling*, 151 Wn.2d at 916-17 (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130-31 (9th Cir. 2003)). We plainly stated that "[p]articularized findings must be made by the trial court to support meaningful review." *Id.* at 917.

¶26 Given our open court jurisprudence and our requirement of particularized findings, the better practice for trial courts is to require every request for the sealing of documents for good cause to be accompanied by a document log identifying each document by number. For each document, the log should state the basis for protection and interest sought to be protected and identify support for assertions in the record. The log should also include a statement as to why redaction or other less restrictive measures than sealing will not protect the interest. If the record implicates a nonparties' interest, the judge may wish to require the identification of nonparties who have interests in the document and to determine whether such nonparties have been or should be notified of the potential disclosure.

¶27 Such a procedure at the time documents are sealed for good cause will facilitate any in camera review at the time of sealing, facilitate future motions under *Ishikawa*, and facilitate appellate review.

2. *Anyone present when the closure or sealing motion is made must be given an opportunity to object*

¶28 As we stated in *Dreiling*, " '[f]or this opportunity to have meaning the proponent must have stated the grounds for the motion with reasonable specificity, consistent with the protection of the right sought to be protected.' " *Id.* at 914 (quoting *Ishikawa*, 97 Wn.2d at 38). Once again, a document log and particularized findings made at the time

documents are sealed for good cause will facilitate meeting this requirement.

*3. The court, the proponent, and the objectors should carefully analyze whether the requested method for curtailing access would be both the least restrictive means available and effective in protecting the interests threatened*

¶29 "Entire documents should not be protected where mere redaction of sensitive items will satisfy the need for secrecy." *Id.* at 917. For example, depending on the purpose for which documents are sought in discovery or submitted to the court in support of rulings, it may suffice to redact names or identifying information of individuals or entities while leaving the documents as a whole unsealed.

*4. The court must weigh the competing interests of the parties and the public and consider the alternative methods suggested*

¶30 *Ishikawa* and our subsequent cases had no need to account for protecting nonparty information. *Rufer*, for example, does not consider that someone other than the opposing party might have "a valid interest in keeping the information confidential." *Rufer*, 154 Wn.2d at 548. This case reveals how nonparty information may require protection.

¶31 As this case illustrates, the records of nonparties may be produced in discovery. Unlike the case before us, most litigants who produce records have no duty to protect the confidentiality of those whose records are produced. Even if a company has a privacy disclosure policy, those sorts of policies generally permit the disclosure of information as "required" or "permitted" by law. It is likely that compliance with court rules of discovery satisfies all such

policies. There is no requirement that those whose private information is being disclosed be notified.[4]

¶32 Here, the certified public accounting firm that produced client tax returns was duty- and statute-bound to protect those records. But in other cases, there may be no advocate for nonparties whose sensitive records have been produced in discovery. The party who originally sought to produce the records under seal for good cause may have little incentive, because of insolvency or some other reason, to advocate under the *Ishikawa* factors on behalf of nonparties. We therefore add to this factor consideration of the interests of nonparties whose records may be disclosed.

¶33 Depending upon the circumstances of the case and whether anyone is advocating for nonparties, a trial judge may consider requiring notice and an opportunity for nonparties to assert any interest they may have in nondisclosure. Again, the court's considerations and findings should be particularized. *See People v. Jones*, 47 N.Y.2d 409, 415, 391 N.E.2d 1335, 418 N.Y.S.2d 359 (1979).

5. *The order must be no broader in its application or duration than necessary to serve its purpose*

¶34 If the court does enter an order sealing documents, it should be limited in time with the option of the proponent to renew the request to seal. However, with or without an expiration date, an order to seal is always subject to challenge consistent with our open administration of justice jurisprudence.

## CONCLUSION

¶35 Smith Bunday, during discovery, produced documents, including those containing private information of

---

[4] The Public Records Act, ch. 42.56 RCW, on the other hand, does provide for such a requirement. "An agency has the option of notifying persons named in the record or to whom a record specifically pertains, that release of a record has been requested. However, this option does not exist where the agency is required by law to provide such notice." RCW 42.56.540.

nonparties. According to the stipulation of both parties, the documents were stamped "confidential" and filed, or were about to be filed, under seal in support of a response to a motion for summary judgment. The court never made any decision involving the disputed information. Instead, the case settled just a few hours after the response and supporting material were filed. The supporting material cannot be relevant to a nonexistent decision. We hold that because the information at issue in this case was not relevant to any decision made by the court, it is not presumptively public under article I, section 10. We remand to the trial court for further proceedings consistent with this opinion.

C. JOHNSON, J.M. JOHNSON, and WIGGINS, JJ., concur.

¶36 MADSEN, C.J. (concurring) — I agree with the lead opinion that documents obtained through discovery that are filed with a court in support of a motion that is never decided are not part of the administration of justice and therefore may remain sealed under the good cause standard of CR 26(c). In such circumstances, the open courts provision of article I, section 10 of the Washington State Constitution is not implicated. Here, the documents in question were never part of the administration of justice. They therefore were not subject to the open courts provision of our state constitution and remain properly sealed under the good cause standard.

¶37 This should be the end of the analysis. But the lead opinion goes on to discuss the *Ishikawa*[5] factors in an effort to explain how they should be applied *if* the open courts provision *were* implicated. Since the open courts provision is not at issue, however, this entire discussion is dicta. *See Pedersen v. Klinkert*, 56 Wn.2d 313, 317, 320, 352 P.2d 1025 (1960) (statements in an opinion that were "not necessary

---

[5] *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982).

to the decision in [the] case" are dicta and do not control future cases); *Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 289, 943 P.2d 1378 (1997) (Sanders, J., concurring) (dicta is not controlling precedent); *State v. Potter*, 68 Wn. App. 134, 149 n.7, 842 P.2d 481 (1992) ("[s]tatements in a case that do not relate to an issue before the court and are not necessary to decide the case constitute obiter dictum, and need not be followed").

¶38 Unfortunately, without a legal and factual basis for an analysis of what should happen should the need arise, trial courts and litigants in future cases must make guesses about the meaning, force, and value of the court's dicta. The prudent course for the lead opinion is to avoid discussing how the *Ishikawa* factors might apply in circumstances not before the court.

¶39 Moreover, the discussion is both unnecessary and confusing. We have already provided considerable guidance for applying the good cause standard for sealing documents obtained in discovery as well as for applying the *Ishikawa* factors when the issue becomes whether documents can be sealed or must be unsealed under the open courts provision. In *Dreiling v. Jain*, 151 Wn.2d 900, 916, 93 P.3d 861 (2004), and *Rufer v. Abbott Laboratories*, 154 Wn.2d 530, 550, 114 P.3d 1182 (2005), we explained how *Ishikawa* applies to discovery documents filed in court, and in *Dreiling* we considered what procedures suffice under the good cause standard.

¶40 Thus, *Dreiling* contains discussion of two separate matters. The court held that the *Ishikawa* factors apply to documents filed in support of dispositive motions and described these factors. *Dreiling*, 151 Wn.2d at 913-15. As a separate matter, the court approved guidelines set out in the Ninth Circuit Court of Appeals' analysis in *Foltz v. State Farm Mutual Automobile Insurance Co.*, 331 F.3d 1122 (9th Cir. 2003), for obtaining protective orders under the good cause standard. Significantly, *Foltz* did not address any constitutional issues, and in *Dreiling* this court did not

purport to turn the relevant guidelines into a constitutional analysis. Rather, the court noted that the opinion in *Foltz* "provides an apt guide to the appropriate mechanics and procedures to be followed when a trial court is confronted with a motion to place documents under seal, whether the documents are pure discovery or are filed in support of dispositive court action." *Dreiling*, 151 Wn.2d at 916.

¶41 These guidelines were approved:

[A] party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted. Unsubstantiated allegations will not satisfy the rule. The requesting party must support, where possible, its request by affidavits and concrete examples. Entire documents should not be protected where mere redaction of sensitive items will satisfy the need for secrecy. Particularized findings must be made by the trial court to support meaningful review. When third parties move to intervene, the court may not stand on its previous order. Instead, these collateral litigants may challenge those documents which should not have been placed under seal in the first place and may be entitled to an order modifying the original protective order. Reliance on the confidentiality provisions of the original protective order does not foreclose independent discovery by intervenors, as it is not reasonable to expect the court to hold records under seal forever.

*Id.* at 916-17 (citations omitted).

¶42 In the present case, the lead opinion not only adds to this list, it also inexplicably intertwines the rule-based inquiry with the open courts constitutional analysis. In addressing the first *Ishikawa* factor, which concerns a showing of need by the proponent of "closure and/or sealing," the lead opinion says that application of this factor will be simple if the trial court follows the procedures adopted in *Dreiling*. In other words, review will be easier if the constitutional issue ever arises.

¶43 But as we have recently reiterated, the open courts provision does not concern the disclosure of information

that surfaces through pretrial discovery but does not otherwise come before the court. *State v. McEnroe*, 174 Wn.2d 795, 801, 279 P.3d 861 (2012) (quoting *Rufer*, 154 Wn.2d at 541). In most instances, discovery will not be filed in support of a motion that is decided by the trial court, and there is no need to set up complex procedures to facilitate review. Moreover, CR 26 and GR 15 contain pertinent standards that must be applied by a court when making decisions about sealing at the discovery stage and when discovery documents are filed. I disagree with the premise that we must impose burdens at the discovery stage whenever sealing is requested because of the possibility that the open courts provision *might* eventually be an issue.

¶44 I especially do not agree with the lead opinion's efforts to add to the burdens that already exist. The lead opinion is not content with what was said in *Dreiling* but directs that a detailed log should accompany every motion to seal and specifies in minute detail what must be recorded in such a log. Lead opinion at 314. Since *Dreiling* already provides for particularized findings, this addition is unnecessary and insulting to our trial judges, who routinely consider and decide parties' motions. It is also inconsistent with the premise that a trial court's decision on whether to seal or unseal a record is reviewed for an abuse of discretion. *Rufer*, 154 Wn.2d at 540; *see also Rhinehart v. Seattle Times Co.*, 98 Wn.2d 226, 232, 654 P.2d 673 (1982) (under CR 26(c), providing for protective orders, a trial court exercises broad discretion). We should allow the trial courts to exercise their discretion as they reasonably see fit, and a decision based on particularized findings that support granting a motion to seal cannot be said to constitute an abuse of discretion, whether there are particularized logs or not.

¶45 It hardly needs to be added that preparation of the detailed logs described by the lead opinion can impose a significant burden on the parties as well. As one example, the lead opinion says that the parties must identify support

in the record for assertions that protection of a document is necessary. Given that motions to seal may be made at the time discovery is sought when there is no record to speak of, this suggests an ongoing obligation to supplement the logs with information as the record develops.

¶46 In addition to other obligations, the lead opinion also says that if a record indicates nonparties have interests in a document, then a trial court may want such nonparties identified and may determine that such nonparties should be notified of potential disclosure. This direction goes far beyond *Dreiling*, which addressed only interests of intervening third parties and implicates a greatly expanded duty on the part of parties to identify any individuals having possible interests implicated in or by discovery documents. I cannot agree with this expansion.

¶47 The lead opinion forthrightly explains that following this procedure at the time documents are sealed will, along with aiding the court in making a sealing decision, "facilitate future motions under *Ishikawa*, and facilitate appellate review." Lead opinion at 314. Again, the lead opinion seems to think the procedure is desirable because the constitutional issue *may* arise, notwithstanding that vastly different review standards and inquiries are involved depending upon whether the issue is sealing discovery documents or the open courts provision.

¶48 The matter of nonparties resurfaces in the lead opinion's discussion of *Ishikawa* factor four, which concerns weighing the competing interests of the parties and the public. In this context, the lead opinion says that there may be no advocate for interests of nonparties who have sensitive records that have been disclosed in discovery. The lead opinion therefore purports to "add to this factor" the "con-

sideration of the interests of nonparties whose records may be disclosed." *Id.* at 316.[6]

¶49 This is a serious matter. The lead opinion is attempting to change the constitutional analysis under the open courts provision by expanding the scope under the fourth *Ishikawa* factor. Any announcement that interests of nonparties to litigation must be considered as a separate matter from the public interest when the open courts provision is at issue ought to be addressed by the court in a case that presents the issue. It should never be introduced "sideways" through dicta discussing procedures that should apply to discovery and motions to seal discovery documents.

¶50 And, again, it seems clear that the lead opinion is of a mind that from the time a party seeks a sealing order for a document that is requested during discovery, the trial court and the parties must proceed as if the constitutional standard applies. I simply cannot agree that the more onerous burdens associated with the open courts provision should be required in every instance at the discovery stage. As the lead opinion itself recognizes, most discovery is never introduced in a trial and does not become part of the record, much less part of a court's decision on a motion. As a court, we should be most reluctant to impose such burdens as suggested by the lead opinion. Discovery is already burdensome enough, without added mandates.

¶51 *Dreiling* has already adopted procedures that should be followed at the discovery stage. These guidelines should not be questioned as a result of the lead opinion's dicta in the present case. If there are to be additional procedures that must be followed when sealing or unsealing is sought at the discovery stage, I believe they should come through appropriate rules adopted by the court. In this way, the requirements are made clear and neither trial courts nor

---

[6] The lead opinion posits that a trial judge may require notice and an opportunity for nonparties to assert any interest in nondisclosure. Lead opinion at 316.

parties are left to speculate about dicta appearing in our case law.

¶52 Finally, there is no need to provide additional general advice to the trial courts and the parties about the open courts provision as it may apply to sealed discovery documents. We explained in *Rufer*, 154 Wn.2d at 550, that "filing merely triggers the analysis of whether records should be opened; it does not automatically open previously sealed records. Parties opposing the potential opening would then be required to make the requisite showing of a compelling or overriding interest for closure." This required showing, as is clearly explained in our decisions in *Dreiling* and *Rufer*, is that mandated under the *Ishikawa* factors, which apply when the open courts provision is implicated by a sealing order. Parties who have any thought that documents will be filed in court should know, because of *Dreiling*, *Rufer*, and the substantive portion of the present lead opinion, what showing is constitutionally required to obtain sealing or prevent unsealing. The *Ishikawa* factors readily explain what must be established to seal or prevent unsealing a record.

## Conclusion

¶53 I agree with the first part of the lead opinion, which holds that documents obtained through discovery and filed with a court in support of a motion that is never decided are not subject to the open courts provision of article I, section 10, and therefore sealing of these documents continues to be determined under the good cause standard of CR 26(c). In the present case, the documents in question were never part of the administration of justice because no decision was made, and therefore the documents were never subject to the presumption of public access.

¶54 Accordingly, the rest of the lead opinion, which purports to explain how the *Ishikawa* factors would apply if this constitutional provision did apply, is dicta. It is also

most unfortunate dicta because it appears to impose additional requirements on the discovery process and to modify the constitutional analysis as it concerns weighing of interests. I believe the dicta should be eliminated from the lead opinion. At the least, it should be disregarded as unnecessary to the court's decision.

J.M. JOHNSON, J., concurs with MADSEN, C.J.

¶55 STEPHENS, J. (dissenting) — Our state constitution commands that "[j]ustice in all cases shall be administered openly." WASH CONST. art. I, § 10. This provision guarantees the public and press a right of access to court documents. *Dreiling v. Jain*, 151 Wn.2d 900, 908, 93 P.3d 861 (2004). To safeguard this right, we held in *Rufer v. Abbott Laboratories*, 154 Wn.2d 530, 549, 114 P.3d 1182 (2005), that any records filed "in anticipation of a court decision . . . should be sealed or continue to be sealed only when the court determines—pursuant to *Ishikawa*[7]—that there is a compelling interest which overrides the public's right to the open administration of justice." Because I believe this simple directive compels a result opposite from that of the lead opinion, I dissent.

## ANALYSIS

¶56 Under article I, section 10 of the Washington State Constitution, "[j]ustice in all cases shall be administered openly." By this pronouncement, the public and press are guaranteed a right of access to judicial proceedings and court documents. *Dreiling*, 151 Wn.2d at 908 (citing *Cohen v. Everett City Council*, 85 Wn.2d 385, 388, 535 P.2d 801 (1975)). We have denounced "[p]roceedings cloaked in secrecy." *Id.* And we have repeatedly recognized open justice as "fundamental to the operation and legitimacy of the

---

[7] *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982).

courts and protection of all other rights and liberties." *In re Det. of D.F.F.*, 172 Wn.2d 37, 43, 256 P.3d 357 (2011).

¶57 Although openness is presumed, the right is not absolute. *Dreiling*, 151 Wn.2d at 909. It may be restricted to protect other fundamental rights. *Id.* But before this is done, the proponent of secrecy must convince the court the restriction is appropriate in light of five factors laid out in *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982). *Tacoma News, Inc. v. Cayce*, 172 Wn.2d 58, 66, 256 P.3d 1179 (2011).

¶58 The lead opinion believes that article I, section 10 is not implicated at all with respect to court documents the trial court does not use to make a decision. It reads our opinions in *Dreiling* and *Rufer* as applying only to court records that are actually considered by the trial judge or jury in rendering a decision. Based on this misreading of our precedent, the lead opinion advances the remarkable proposition that court records are no longer public if the case settles before the court rules. This significantly erodes the constitutional guaranty of openness. Moreover, the lead opinion's misstep results in an unworkable rule, requiring courts to distinguish between court records that are subject to article I, section 10 and those that are not based on a determination of which filings are "relevant." Yet, what is relevant will be impossible to know before the court renders a decision; for example, the very records the lead opinion today concludes may be sealed without regard to the *Ishikawa* test would have been subject to that test had a motion to seal been brought between the time they were filed and the time the case settled and the summary judgment motion was withdrawn.

¶59 We have recognized that "there are distinctions to be drawn depending on the nature and use of court records." *Yakima County v. Yakima Herald-Republic*, 170 Wn.2d 775, 803, 246 P.3d 768 (2011). But, the distinctions we have drawn do not depend on whether submitted documents in fact informed a decision of a court. Instead, the constitu-

tionally mandated presumption of openness attaches when documents are filed with a court and thus deemed relevant to the proceedings. As we stated in *Rufer*, it applies to documents filed "in *anticipation* of a court decision." 154 Wn.2d at 549 (emphasis added).

¶60 Although the lead opinion purports to follow our holdings in *Dreiling* and *Rufer*, a proper reading of these cases reveals the lead opinion's holding strays from their guidance. In *Dreiling*, we held "that the same guidelines applied in *Ishikawa* must be applied to documents filed in support of dispositive motions." 151 Wn.2d at 915. We acknowledged a distinction between "[m]ere discovery" and material filed with a court in anticipation of a court decision. *Id.* at 909-10. Because " '[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action,' " such information may be kept confidential for good cause shown. *Id.* at 909 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984)). In contrast, documents filed in support of a dispositive motion "lose their character as the raw fruits of discovery." *Id.* at 910. These documents may be withheld from the public's view only upon a showing of an overriding interest necessitating secrecy. *Id.*

¶61 The court in *Dreiling* distinguished between unfiled discovery and filed documents germane to issues presented in a case. In the context of making this distinction, we stated that article I, section 10 does not "speak to" the disclosure of tangentially related discovery information that "does not become part of the court's decision-making process." *Id.* We cautioned, however, that "the same cannot be said for materials attached to a summary judgment motion." *Id.* Materials of that ilk are presumptively open to the people and may be sealed only upon the demonstration of an overriding interest compelling secrecy. *Id.* A close reading of *Dreiling* reveals that in making this point, we were in actuality defining what material "become[s] part of

the court's decision-making process" and is thereby subject to the presumption of openness. *Id.* Documents thought relevant enough by a party to be used in support of a motion are part of the open court process subject to article I, section 10. Unfiled discovery materials are not. Nowhere in *Dreiling* did we suggest that as a precondition to the application of article I, section 10, documents must in fact result in a decision by the court or jury.

¶62 Instead, we endorsed the broader principle that the check of public scrutiny on court proceedings is one of the reasons our constitution demands justice be conducted openly. *See id.* at 903 ("Justice must be conducted openly to foster the public's understanding and trust in our judicial system *and* to give judges the check of public scrutiny." (emphasis added)); *see also id.* at 908 (" '[O]perations of the courts *and* the judicial conduct of judges are matters of utmost public concern.' " (alteration in original) (quoting *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839, 98 S. Ct. 1535, 56 L. Ed. 2d 1 (1978) (emphasis added))). The premise of article I, section 10 is that open access will cultivate the public's understanding and confidence in the operation of our justice system as a whole. *Rufer*, 154 Wn.2d at 549.

¶63 In *Rufer* we were again asked to determine the appropriate standard for sealing records in a civil case. At issue were documents attached to nondispositive motions and deposition testimony that had been published (and thus technically filed). *Id.* at 540.[8] One of the defendants moved to seal several exhibits and selected portions of deposition testimony. *Id.* at 536. The plaintiffs conceded that the deposition testimony not used at trial could remain sealed for good cause but opposed closure of the remaining

---

[8] We noted in *Rufer* that " '[t]he publication of a deposition at trial is simply the clerical act of "the breaking of the sealed envelope containing the conditional examination [deposition] and making it available for the use by the parties or the court." ' " 154 Wn.2d at 540 n.3 (quoting Pet'rs' Suppl. Br. at 17 n.12 (quoting *Augustine v. First Fed. Sav. & Loan Ass'n of Gary*, 270 Ind. 238, 240, 384 N.E.2d 1018 (1979))).

records. *Id.* at 536-37. The trial court ordered all records in question be made available to the public because a compelling interest had not been shown. *Id.* at 538.

¶64 We concluded the trial court employed the correct legal standard: "any records . . . filed with the court in anticipation of a court decision (dispositive or not) should be sealed or continue to be sealed only when the court determines—pursuant to *Ishikawa*—that there is a compelling interest which overrides the public's right to the open administration of justice." *Id.* at 549. We recognized one exception for "deposition transcripts published but not used in trial or as an attachment to any motion," noting the parties' agreement that the good cause standard applied to such transcripts. *Id.* at 550. We thus affirmed the trial court and remanded for the limited purpose of resealing the depositions that were not presented at trial or used in support of any motion. *Id.* at 553.

¶65 Underlying our decision in *Rufer* was recognition that the openness secured by article I, section 10 "is not concerned with merely whether our courts are generating legally-sound *results*. Rather, we have interpreted this constitutional mandate as a means by which the public's trust and confidence in our *entire judicial system* may be strengthened and maintained." *Id.* at 549 (citing *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 211, 848 P.2d 1258 (1993)). In refusing to draw a distinction between dispositive and nondispositive motions, we observed that everything passing before a trial court is relevant to the public interest and, ultimately, the legitimacy of our courts. *See id.* at 542. "[T]he public has an intense need and a deserved right to know about the administration of justice in general . . . ." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 604, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980) (Blackmun, J., concurring). This interest includes learning about "all the actors in the judicial arena; and about the trial itself." *Id.*

¶66 The basis for distinguishing the published depositions from the other documents at issue in *Rufer* was that

the published depositions were neither placed before the fact finder nor used in support of a motion, i.e., they did not become part of the court's decision-making process. *See Rufer*, 154 Wn.2d at 550 ("The one exception would be any deposition transcripts published *but not used in trial or as an attachment to any motion*." (emphasis added)). In contrast, all documents at issue in this case were put before the court in anticipation of a judicial decision. Accordingly, they lost their character as mere discovery. As made clear in *Rufer*, it is the "*filing* [that] triggers the analysis of whether records should be opened." *Id.* (emphasis added and omitted). Once the presumption of openness arises, the public's right of access cannot be restricted unless the proponent of secrecy shows compelling reasons for closure consistent with the standards articulated in *Ishikawa*. *Tacoma News*, 172 Wn.2d at 66.

¶67 The lead opinion believes it would go too far to require adherence to article I, section 10 when a case settles without the judge having reviewed the documents at issue. It suggests such documents are irrelevant because no judicial decision was rendered. Lead opinion at 311. But the lead opinion's notion of when a document is "relevant" is circular. Its reasoning begs the question: Were the documents *relevant* between the time they were filed in connection with a summary judgment pleading and the time the court received notice to strike the summary judgment hearing? The lead opinion gives no indication of how timing affects its analysis, but it would acknowledge that the *Ishikawa* standard must apply to a motion to unseal records filed while a matter is pending. Otherwise, a court would have to know whether it was going to be required to rule on the matter before it could rule on a motion to seal or unseal.

¶68 Herein lies the heart of the problem with the lead opinion's rule. The relevance of a court record—which under the lead opinion's view determines the applicable standard for sealing—cannot turn on what transpires *after* the record

is filed in anticipation of a decision. A motion may be pending in court for months before a case resolves. A case may go through an entire trial only to be settled before verdict. But, when a member of the press or public moves to intervene and unseal part of the court file, the court must review the file and make a ruling. It cannot defer ruling on the motion to see if the documents in question will in fact be relevant to a judicial decision.[9]

¶69 Our decisions in *Dreiling* and *Rufer* appropriately treat the question of relevance, not as the lead opinion does, but instead as describing documents that are filed with the court in anticipation of a judicial decision. This includes documents relating to both dispositive and nondispositive motions. Beyond this, any further consideration of whether a filed document is relevant *to the merits of the case* is properly factored into the *Ishikawa* analysis when a motion to seal or unseal is brought. As we explained in *Rufer*:

> [T]he potential for abuse is also addressed through the application of the *Ishikawa* factors to a motion to seal. If a party attaches to a motion something that is both irrelevant to the motion and confidential to another party, the court should seal it. When there is indeed little or no relevant relationship between the document and the motion, the court, in balancing the competing interests of the parties and the public pursuant to the fourth *Ishikawa* factor, would find that there are *little or no valid interests* of the party attaching the document to its motion or of the public with respect to disclosure of the document. This is because the interest of the public that we are concerned with in making these determinations is the public's right to the open administration of justice. We have already held that article I, section 10 is not relevant to documents that

---

[9] The lead opinion goes one step further, stating that "[i]n order for documents to become part of the decision making process, there must be a decision." Lead opinion at 311. While the settlement in this case occurred shortly after the documents at issue were filed, this case is not unique in having been resolved without a judicial decision. The lead opinion does not explain what its rule means for entire court files in those cases that wind through the judicial system for months or even years, only to have the parties reach an out-of-court settlement and dismiss the case.

do not become part of the court's decision making process. *Dreiling*, 151 Wn.2d at 909-10. Thus, if a record is truly irrelevant to the merits of the case and the motion before the court, the court would not consider the document in evaluating the motion before it, and in applying *Ishikawa* it would likely find that sealing is warranted.

154 Wn.2d at 547-48.

¶70 The lead opinion quotes a portion of this passage and describes it as holding that "article I, section 10 applies only to documents relevant to the merits of the motion before the court." Lead opinion at 311. But the full passage makes clear that the relevance of a court record is part of the application of the *Ishikawa* analysis, not an exception from it. *Rufer* does not support the lead opinion's limited view of the reach of article I, section 10.[10]

¶71 Like the lead opinion, the trial court believed article I, section 10 does not speak to the records here because the case settled before the court had occasion to review them. It therefore sealed the records without considering the criteria articulated in *Ishikawa*. In fact, it appears the trial court applied no standard at all, relying solely on the previously entered protective order and the parties' stipulation. Under our precedent, this was improper. *See Dreiling*, 151 Wn.2d at 917 ("When third parties move to intervene, the court may not stand on its previous [protective] order."); *see also Rufer*, 154 Wn.2d at 550 (explaining that parties may file records under seal pursuant to the terms of a protective order, but the court should open such records upon motion "unless the party wishing to keep them sealed demonstrates an overriding interest"). Because the trial court reached its decision

---

[10] Given the lead opinion's conclusion that article I, section 10 does not apply to the court records at issue in this case, its extended discussion of the *Ishikawa* factors is meaningless. *See* lead opinion at 311-16. In particular, the lead opinion's suggestion that courts should create document logs and notify nonparties whose interests may be affected by the sealing or unsealing of records has no application to its resolution of this case. Under the lead opinion's holding, the only consideration for sealing the records at issue is "good cause" under CR 26(c) because in its view the documents never became part of the administration of justice. *See* lead opinion at 308.

by applying an improper legal standard, I would remand to the trial court to apply the correct rule and to determine whether the court files in question should be sealed under the *Ishikawa* test.

## CONCLUSION

¶72 The lead opinion departs from the standard we adopted in *Dreiling* and *Rufer* and creates an unworkable rule that undermines the constitutional guaranty of open court records. I would adhere to our precedent and hold that documents filed with a court in anticipation of a decision are presumptively open to public access without regard to whether they are ultimately considered by the court in rendering a decision. With respect to such court files, the people's right of access cannot be restricted unless the proponent of secrecy shows compelling reasons for closure consistent with the standards stated in *Ishikawa*. I respectfully dissent.

OWENS and FAIRHURST, JJ., and ALEXANDER, J. PRO TEM., concur with STEPHENS, J.

Reconsideration denied April 30, 2013.